1  MR. CHRISTOPHER JOHNSON

2  #E65821  —  D1-105

3  P.O. Box 1050

4  SOLEDAD, CA. 93960

5  IN PROPRIA PERSONA

FILED

APR — 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

6

7  IN THE UNITED STATES DISTRICT COURT

8  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  CHRISTOPHER JOHNSON       NO. C07-5766 WHA (PR)

10            PETITIONER,      MOTION TO CONSOLIDATE

11   VS.                      RICO ACT CHARGES
                             C07-5766 & C07-6000, AND

12  WARDEN EVANS, ET AL      ORDER GRANTING RELEASE.

13            RESPONDENTS, / MEMORANDUM POINTS & AUTHORITIES.

14

15  TO: THE HONORABLE PRESIDING JUSTICE W. ALSUP

16  OF THE COURT MENTIONED ABOVE, AND TO THE ASSOCIATE

17  JUSTICES:

18    1. PETITIONER, CHRISTOPHER JOHNSON, HEREBY PETITIONS

19  THIS COURT WITH A MOTION TO CONSOLIDATE CASE NO.

20  C07-5766 & C07-6000 (HABEAS CORPUS & WRIT OF MANDATE

21  FOR PROHIBIT AND SETS FORTH THE FOLLOWING FACTS AND

22  GROUNDS — FOR ORDER GRANTING RELEASE - IMMEDIATE IS-

23  SUANCE OF THE WRIT.

24    2. PETITIONER IS ILLEGALLY CONFINED - DURESS PER MINUS

25  AT THE SALINAS VALLEY STATE PRISON, UNDER A JUDGEMENT -

26  OF CONVICTION AND SENTENCE. ON OR ABOUT NOVEMBER 14, 2007

27  HABEAS CORPUS - DIRECT APPEAL WAS FILED IN FEDERAL COURT

28  AND FOLLOWING THAT WRIT OF MANDATE ON 12/28/08 WAS FILED.

1    3. PURSUANT TO USCA 2-28 SEC. 636
2       JURISDICTION, POWERS, AND TEMPORARY ASSIGNMENT
3   THE COURT HAS JURISDICTION TO RELEASE PETITIONER:
4   § 636 JURISDICTION, POWERS, AND TEMPORARY ASSIGNMENT
5   (a)(2) THE POWER TO ADMINISTER OATHS AND AFFIRMATIONS
6   ISSUE ORDERS PURSUANT TO > SECTION 3142 of TITLE 18
7   UNITED STATES CODE (IN CONFORMITY WITH) CONCERNING
8   RELEASE OR DETENTION of PERSONS PENDING TRIAL,
9   AND TAKE ACKNOWLEDGEMENTS, AFFIDAVITS, AND DEPOSITIONS
10  § 636 (a)(4) THE POWER TO ENTER A SENTENCE FOR A PETTY
11  OFFENSE; AND * PETITIONER INITIAL PETITION HE SUBMITTED
12  DOCUMENTATION REGARDING "GROSS GOV'T. MISCONDUCT." AGAIN,
13  PETITIONER'S FARRETTA RIGHTS WERE VIOLATED BY JUDGE
14  REARDON - HE REFUSED PETITIONER'S RIGHT TO FILE MOTIONS IN
15  HIS BEHALF FOR CONTINUANCE TO OBTAIN FRUITFUL EVIDENCE
16  / INFORMATION FROM PRIVATE INVESTIGATOR MICHELLE GANDY.
17  MICHELLE GANDY FAILED TO PRODUCE CRUCIAL DISCOVERY
18  WHICH WAS KEY TO MY CASE AND POINTS, THAT GOVERNMENT
19  PRISON, PAROLE, BOARD of PRISON TERMS AND COURT JUS-
20  TICE ADMINISTRATORS HAVE BEEN OVERLY VINDICTIVE ADVERSE-
21  LY AFFECTING MY LIVELIHOOD (FROM 1990 TIL PRESENT) BY
22  HINDERING MY CHANCES FOR FUTURE SUCCESS BY GIVING ME
23  AN "UNSPOKEN CARREER CRIMINAL ACT" AND CONTINUALLY ACT-
24  ING ARBITRARILY WITH WHIMSICAL DISCRIMINATION & INSOL-
25  ENT DISPLAYS of GOV'T. MALFEASANCE AND RACIAL OVER-
26  TURES FOR DEBORAH DOWNS & B. SCHNEIDER BY CLUMSILY
27  DROPPING THE BALL WHILE SUPPOSEDLY REGULATING THE
28  LAW — FOR INSTANCE:

2

1. AFTER VIOLATING MY FARRETTA RIGHTS AS WELL AS DUE PROCESS — WHAT ARE THE ODD'S JUDGE REARDON WOULD BE ON THE ~~SUPREME~~ APPELLATE COURT PANEL OF JUDGES THAT DENY MY APPEAL. PLEASE NOTE EXHIBIT "A" FROM 1990 TIL PRESENT — FOR THE RECORD — I'M ALLEDGING RICO ACT CONSPIRACY § 182 PC — WHICH IN 1990 A FIRST TERM PRISONER WAS WRONGFULLY SHOT IN 1991, EXCESSIVE FORCE WAS USED BY GUARD "RODRIGUEZ" — WHERE NO WEAPON'S WERE INVOLVED. AT THE TIME WHEN I WAS SHOT THERE — I WAS NOT ACTUALLY ENGAGED INTO BATTLE/COMBAT. BUT GOV'T. ALLOWED ME TO BLEED FOR OVER 1 HR 45 MINS. WHEN I GOT TO THE HOSPITAL — I DIED ON THE OPERATING TABLE. SEE EXHIBIT "B" MEDICAL RECORD INCORPORATED. I WAS A LEVEL 2 INMATE ILLEGALLY HELD IN CORCORAN S.H.U BEYOND MY MAXIMUM TERM OF CONFINEMENT WITHOUT RECEIVING A 114-D HEARING 48 TO 72 HRS NOTIFICATIONS FOR PROCEDURAL SAFEGUARDS. TO REMOVE ME FROM SECURITY HOUSING UNITS S.H.U. AT A LEVEL 4 FACILITY — I WAS WRONGFULLY SHOT AND NEVER COMPENSATED 1 PENNY OR IOTA OR WE OWE YOU (FROM THE BOARD OF PRISON TERMS) MIND YOU — 18 YEARS HAS PASSED AFTER MY 1990 PLEA BARGIN AGREEMENT WAS MADE (CONTRACT LAW) 1 COMMITMENT/SENTENCE FOR (4) 211'S STRIKEN FROM THE RECORD BY STANLEY P. GOLDE. PLEASE NOTE EXHIBIT "C" PURSUANT TO BUCKLEY VS. TERHUNE DECISION THE 30 TO LIFE SENTENCE IS TOTALLY ERRONEOUS, WHEN NONE OF THE PRIORS WERE BROUGHT NOR TRIED BY JURY. FURTHERMORE, COUNSEL WAS SO PREMATURE, HE FAILED TO GIVE ORAL CLOSING ARGUE-

✱ PLEA AGREEMENT BREACHED (1990)

1  MENTS NOR OPENING ARGUMENTS FOR THAT MATTER. MR.
2  WALTER K. PYLE ALLOWED OVERWHELMING "GROSS GOV'T.
3  MISCONDUCT" BY THE PROSECUTION LANCE KUBO. I EVEN
4  FILED A STATE BAR ASSOCIATION COMPLAINT — PLEASE
5  NOTE EXHIBIT "D" COUNSEL MR. PYLE WAS AN ADVERSE
6  INCOMPETANT CO COUNSEL /OR CO PARTNER OF THE DISTRICT
7  ATTORNEYS OFFICE THAT DID ME A DISSERVICE, WHEN
8  JUDGE REARDON RUSHED ME TO TRIAL — WHEN CLEARLY,
9  AS A LAYMAN AT LAW — I WAS NOT READY TO TRY A
10  CASE AT LAW... ESP. WITHOUT FURTHER CRUCIAL EVIDENCE
11  FROM MICHELLE GANDY CONCERNING FELONY 211 STOPS
12  BY O.P.D. POLICY AND PROCEDURES / PRACTICES OF
13  COMM ORDERS.... POLICY CONCENING STEREO TYPICAL
14  RACIAL PROFILING BLACKS AND OTHER PERTINENT INFO
15  IN DISCOVERY REGARDING OFFICER'S ARREST RECORD /INCL.
16  BUT NOT LIMITED TO DISCIPLINARY OF OFFICER KELLY &
17  BROCK. IT MAY SOUND "PETTY" BUT THAT'S ABOUT ALL
18  THE PROSECUTION HAD WAS A "PETTY THEFT" OR AT BEST
19  A "RECEIVING STOLEN PROPERTY". WHEN THE OFFICER,
20  SAYS HE FOUND THE CARDS IN THE CAR OR PASSENGERS
21  PURSE. IT'S FRUITS FROM THE POISONOUS TREE DOCTRINE
22  HE HAD NO "PROBABLE CAUSE" TO PULL ME OVER TO
23  BEGIN WITH ESP. WHEN "CHAIN OF CUSTODY" ISSUES ARE
24  PRESENT BECAUSE HE ALSO DROVE THE VEHICLE WITHOUT
25  CONSENT AND HAD NO INITIAL CONSENT TO SEARCH. THERE
26  WAS MIRANDA VIOLATIONS AS WELL. THIS WAS RACIAL
27  PROFILING "BLACKMAN IN A CADILLAC" — PLUS THE GOV'T.
28  COULD HAVE BEEN LOOKING THRU MY EYES TO BEGIN WITH

4.

1  OR THE WHOLE TIME. AGAIN, IT'S ANOTHER REASON TO
2  COMBINE OR CONSOLIDATE #CO7-5766 & CASE NO CO7-6000
3  BECAUSE MICHELLE GANDY WAS/IS A CIA & FBI INVEST-
4  IGATOR WHICH THEY UTILIZED TO SABOTAGE ME, MY
5  CRIMINAL CASE, & APPEAL WITH VINDICTIVE TREATMENT
6  ALSO TOWARDS MY FAMILY MEMBERS (DEATH'S), WHILE SHE
7  TORTURES ME, ALL THE WHILE STEALING MY SEMIN, BLOOD
8  & OTHER D.N.A. INCLUDING PAIN MEDICINE, ILLEGALLY USE
9  FALSE DOCUMENTATION - FALSIFIED RELEASE CONSENT
10  TO PLACE ME ON THE INTERNET & AN A F.B.I HOLD
11  ON ME, AND FOR 3YEARS SMOKE CRACK, KIDNAP MY KIDS
12  AT SALINAS VALLEY STATE PRISON -UNDER GOVT. FAIL/SAFE
13  PROGRAM WHILE TORTURING & SELLING MY SEMIN, BLOOD,
14  AND ENGAGING IN DEMONIC ACTS, PLEDGERIZING MY
15  BUSINESS IDEALS WITH DONNIE THOMAS, SABRINA PLAZA,
16  BARBARA WEDNEISKI, DEBORAH DOWNS, BERNICE SCHNEIDER,
17  WILLIAM J. BABBITT - WITH THELTON E. HENDERSON'S FULL
18  KNOWLEDGE, SELLING MY IDEAL'S TO UNIVERSITIES, ENGAG-
19  ING IN BUSINESS DEALS WITH CORPORATIONS - ALL THE
20  WHILE TRYING TO ROB, RAPE & KILL ME AND AS MANY
21  FAMILY MEMBERS OF MINDS AS POSSIBLE. I KNOW FROM
22  EXPERIENCE THAT THE GOVT. SUPPORTED MICHELLE GANDY
23  BECAUSE THEY ALLOW HER TO SELL MY FOOD PACKAGES TO
24  S.N.Y. PROGRAM, APPLIANCES, MAIL, STAMPS, MONEY ORDERS
25  ARE ALL STOLEN BY HER CRONNIES AS WELL AS MY LEGAL
26  PAPERS, BOOKS, BUSINESS PLANS, FINANCIAL NON PROFIT ORGANI-
27  ZATION BUSINESS SUMMARIES ECT... ALL STOLEN FROM ME
28  WITH GOVT. ASSISTENCE - THEIR MULTI TASK FORCE GROUP

5.

1  THAT HAVE CIA & FBI SURVEILANCE TECHNIQUES THEY
2  USE TO STEAL PROPERTY, ASSETS, REVENUES, EVEN MY
3  INHERITANCES WERE STOLEN VIA B. SCHNEIDER, S. PLAZA,
4  WILLIAM BABBITT, VERONICA GARCIA, PAULA BONELLA &
5  EUGENE SCHNEIDER AND I BELIEVE THAT T. HENDESON
6  AND OTHERS (MICHEAL JACKSON, DONNIE THOMAS) WERE
7  INVOLVED OR ASSISTED IN SEPERATING ME FROM MY PRO-
8  PERTY FOR A DURATION OF 18+ YEARS. WHEREAS I
9  SHOULD HAVE BEEN EXONERATED ALREADY - BUT THE
10 GOVT. PROFITEER'S OFF RAPE, MURDER, MURDER FOR HIRE,
11 KIDNAPPING & PIMPING UNDERAGE/MINOR'S EVERY DAY AS
12 WELL AS MULTI-FACETED DRUG TRAFFICKING ILLEGAL NARCO-
13 TICS! IT MIGHT SOUND PETTY BUT WHEN YOU ADD TO IT
14 A 7 YEAR SENTENCE AS A 2ND OFFENCE FOR R.S.P.-
15 RECEIVING STOLEN PROPERTY (1997) YOU TRULY CAN SEE,
16 "GOVT. UNETHICAL GROSS MISCONDUCT". ABOUT 6 YEARS FLAT,
17 THAT I'VE SERVED ON ANOTHER R.S.P.-RECEIVING STOLEN PRO-
18 PERTY (2002) UPGRADED @ TO A 211 2ND DEGREE AND THEN
19 GIVEN THE ERRONEOUS SENTENCE OF 30 TO LIFE. THEN
20 PLACED ON THE INTERNET - BEATEN BY GUARDS NUMEROUS
21 AMOUNTS OF TIMES; PEPPER SPRAYED, RAPED VIA NANOGEN TECH-
22 KNOWLEDGY - RAPED BY GUARD, PUBLIC, THEN MADE TO BE
23 AN INMATE CONJUGAL VISIT CENTER & INMATE WELFARE FOR
24 WELL OVER 3½ YEARS. I CAN BEGIN TO REST MY CASE,
25 WHEN I SAY IT TRULY MAKES THE JUSTICE SYSTEM APPEAR
26 TO BE RUDELY CALLOUS OR A BIG HOAX AN IN CONTEMPT OF
27 THE SAME LAWS WHICH GUIDELINE "SLAVERY & GENOCIDE"
28 WHILE BEING GUILTY OF THE ESPIONAGE AND RICO ACT!...

IN LIGHT OF THE FACTS, NOT TO MENTION THAT
PETITIONER HAS SERVED ABOUT 3 YEARS "ILLEGALLY SEGRE-
GATED" AND UNDER UNDULY AMOUNTS OF STRESS, PAIN & SUFFER-
ING AND ALSO IN NEED OF KNEE, FOOT AND BACK SURGERY
SEE EXHIBIT "E" ONLY BOLSTERS PETITIONERS CLAIMS
OF DURESS PER MINUS BECAUSE THE GOV'T BREECHED
IT'S CONTRACTUAL DUTY/ABILITY TO PROVIDE AND MAIN-
TAIN SAFE CUSTODY AND/OR HOUSING AS OFFICER'S CONT.
TO BEAT/HARRASS ME, CONTAMINATE MY FOOD, STEAL MY
MAIL, STAMPS, MONEY ORDERS ECT. PROPERTY SEE EXHI-
BIT "F". I'VE BEEN WRONGFULLY KEYHEA'd TWICE &
FORCED INVOLUNTARY PSYCHOTROPIC MEDICATION, WHEEL-
CHAIR STOLEN, NEW MATTRESS STOLEN, IMPORTANT LEGAL
MATTERS, BUSINESS BOOKS, HANDWRITTEN (PERSONALLY WRITTEN)
BOOKS (4) WITH CONCISE LOCATIONS OF OTHER INHERITANCES
OF MY DAVIDIC COVENANT ANCESTRIAL INHERITANCE. I DO
BELIEVE THAT THE MILITARY SEIZED IN EXCESS OF OR
OVER 7,000 TONS OF GOLD WHICH BELONGS TO ME ALL
STOLEN. COLD PART ABOUT IT IS THEY BARELY FEED
ME AND I'M A VEGETARIAN. I'M MALNOURISHED ONLY
WEIGHING 127 TO 135 lbs THEY DO NOT AFFORD ME
ACCESS TO CANTEEN/STORE HYGEINE, FOOD ITEMS OR
NECESSITIES FUNDAMENTAL GROOMING AND THEY'VE
STOLEN ABC, CBS, NBC, & FOX - AND QUAL.COM
FROM ME (SATELLITE/MEDIA). THE LAST 7 MONTHS -
I'VE BEEN PLACED UNDER ILLEGAL SHU TERM - WHILE THEY
"INVESTIGATE" C/O RODRIGUEZ "WHO BEAT ME IN MY WHEEL -
CHAIR, WHILE I WAS IN HANDCUFF & LEG MECHANICAL

1  RESTRAINTS — I'M KEEP IN ADMINISTRATIVE CONFINEMENT
2  FOR FILING APPEAL #"SVSP-07-03725" GUARD MISCONDUCT
3  / ABUSIVE TREATMENT." MEANWHILE, I WAIT FOR THE OUT-
4  COME, MEDICAL STAFF DELIBERATELY INDIFFERENT TO MY
5  SERIOUS MEDICAL NEEDS. ALSO, WITH THE GOV'T FAIL/
6  SAFE PROGRAM THERE IS NO EQUAL PROTECTION OF
7  THE LAW FOR ME AS MY CONSTITUTIONAL RIGHTS ARE
8  OVERLOOKED AS IF I'M A GOV'T EXPERIMENT OR RESEARCH
9  LABRATORY ANIMAL. NO VISITS, LETTERS, ATTORNEY VISITS. NOT
10 ONCE HAS THIS GOV'T. RECOMMENDED DEPARTMENT OF
11 REHABILITATION OR COMMUTATION OF SENTENCE FROM THE
12 BOARD OF PRISON TERMS (REVIEW); BUT TO RESTRICT MY LIFE
13 LIMB, & LIBERTY, RIGHTS TO INHERIT, IS TANTAMOUNT TO
14 THE MANN ACT & SLAVERY — BEATING ME WHILE IN A
15 WHEELCHAIR ON CAMERA, WHILE IN LEG & HANDCUFF RESTRAINTS
16 & BEING CALLED A NIGGER BY THE GUARD "RODRIGUEZ"
17 (SAME NAME AS THE ROGRIGUEZ THAT SHOT ME IN 1991) THEN
18 BEAT THE CUFFS OFF ME — HOW LONG DOES IT TAKE FOR AN
19 "INVESTIGATION" — THIS IS GOV'T BLATANT FOUL PLAY TO
20 CONTINUE TO MISTREAT ME IN VIOLATION OF ADA AMERICANS
21 WITH DISABILITIES ACT — INHUMANE SURGICAL REMOVAL OF MY
22 SCROTUM / TESTICLE TWICE OR MORE BY NASA OFFICIALS
23 DR. DOWNS & PAULA BONELLA + B. SCHNEIDER W/ M. GANDY.
24 FOR NANOGEN, NASA, AND LUCENT, TECHNOLOGIES TO PERSIST
25 IN ITS UNETHICAL EXAMINATIONS & SURGERIES WITHOUT CON-
26 SENT PLUS TO BE PSYCHOLOGICALLY TORTURED 3 YEARS +
27 PLUS ADMINISTRATIVELY CONFINED IS DOWN RIGHT OUTLAND-
28 ISH, CRUEL AND UNUSUAL PUNISHMENT "TORTURE" ESPECIALLY

1   WHILE ONE IS CONFINED TO/OR IN A WHEELCHAIR AND

2   DELIBERATELY INDIFFERENT TO SERIOUS MEDICAL NEEDS

3   PURSUANT TO 2 SURGICAL CONSULTS KNEE SURGERY IS NOT

4   ELECTIVE IT'S "MANDATORY". PLEASE NOTE EXHIBIT "G"

5   MY BACK IS ALSO BAD IN 2 PLACES OF MY SPINE IN THE

6   LOWER LUMBAR L1 - L5 REGION. DURING MY M.R.I. IT

7   LOOKED FRAGMENTED / CRACKED AND VERY CALCIUM DE-

8   FICIENT IN THOSE 2 AREAS. TO STEAL MY PAIN MEDS.

9   EVERYDAY & SELL IT FOR CRACK COCAINE IS DOWN RIGHT

10   WICKED OF MS. GANDY. SHE GETS HIGH AND STEALS

11   MY PAIN PILLS, FOOD, WATER ECT WITH PAULA BONELLA.

12   THEY ALSO FORCE AN OVERWHELMING AMOUNT OF TOXIC

13   SUBSTANCES INTO MY SYSTEM AS IF THEY ARE LITERALLY

14   ATTEMPTING TO ERADICATE ME OR EXTRADITE ME PER-

15   MANENTLY OR TOTALLY CRIPPLE ME. THEY BRIBE THE

16   GUARDS AND EVERYONE WITH SEX OR EXTORT THEM WITH

17   VIDEO RAPE FOOTAGE OR UTILIZE NUCLEAR LASER ASS-

18   AULTS UPON PEOPLE FOR PROFIT - FOR DR. DOWNS OR

19   B. SCHNEIDER DEATH EXPERIMENTS - ALL WHILE WHORING/

20   PROSTITUTING THEMSELVES AS WELL AS MY FACE ON THE

21   INTERNET. THIS IS CYBER TERRORISM, BLAXPLOITATION AND

22   THE F.B.I. SHOULD RELINQUISH IT'S HOLD ON ME AS IT IS

23   ALSO A "HATE CRIME" AGAINST BLACKS OR PEOPLE OF COLOR.

24   I AM A JEHOVAH'S WITNESS! WHY ARE GOVT. OFFICIALS

25   ENGAGING IN GROSS UNETHICAL CONDUCT, SELLING MY SEMIN,

26   CHILDREN, BLOOD, & OTHER DNA PLUS IMMOLATING THE

27   KIDS IN THE FIRE FOR SATANIC RITUALS, KILLING, RAPING,

28   VINDICTIVELY KIDNAPPING MY BABIES MOTHERS - MY SEMIN

1. IS REPRODUCED WITHOUT MY CONSENT - VIOLATIVE OF THE
2. TRADES & PATENT ACT. LOADED FIREARMS, DRUGS,
3. WITHIN ARMS REACH OF INMATES - PROSTITUTION OF
4. INMATES - MONOPOLIZING THEM FOR DRUG DISTRIBUTION!
5. ALL WHILE GIVING THEM H.I.V. BIO FILM IS TANTAMOUNT
6. TO GENOCIDE. MEDICALLY & SCIENTIFICALLY, I DIDNOT
7. PURPORT OR SIGN NOTHING FOR PAULA BONELLA F.B.I.
8. TO UTILIZE MY SEMIN OR PERFORM TEST OR SURGICAL
9. TREATMENT OR IMPLANTS FROM MICRO ADVANCE SYSTEM,
10. NANOGEN OR LUCENT TECHNOLOGIES OR ANY OTHER
11. CORPORATE TRADING SUCH AS VERONICA GARCIA, DEBO-
12. RAH DOWNS, C.I.A OR NASA TO GIVE MY PROPERTY AWAY
13. NOR ENGAGE IN BUSINESS MATTERS IN MY BEHALF. AS I
14. BELIEVE THEY ARE SHADY MALICIOUS AND UNDER HANDED
15. IN THEIR BUSINESS DEALINGS. I BELIEVE THEY ATTEMPTED
16. TO STEAL MY PROPERTY INHERITANCES WITH DONNIE THOMAS,
17. WILLIAM BABBITT & WITH THE GOVT. SUPPORT OF T. HENDERSON
18. TO ASSIST THEM WITH FRAUDULENT SIGNING, OR CONCEALING/
19. FALSIFICATION OF "POWER OF ATTORNEY" FORMS & ESARHADDON
20. FORMS THEN SUBMITTING FALSE BUSINESS CLAIMS WITH MY
21. SIGNATURE LASER SCANNED. I ALSO BELIEVE THEY INTENDED
22. TO STEAL MY FIRST RICO ACT FILED IN MONTEREY SUPERIOR CT
23. CASE # HC-5257. AGAIN, I AM MADE TO SIT IN A SMALL
24. SIZE CELL DAILY WHILE THEY RAPE MY BUSINESS IDEALS,
25. TORTURE ME, USE GUARDS TO HARM ME & MY FAMILY. THEY
26. BARTER & MARKET AWAY MY RELEASE DATE. EXTORT & EX-
27. PLOIT PAYING CONSUMERS (SEMIN), GIVING THEM H.I.V. & AIDS.
28. VIA MICHELLE GANDY, SABRINA PLAZA, PAULA BONELLA &

THEY PLACE
OTHERS. I WAS THE CURE TO THE DISEASE NANO-
GENE & LUCENT TECHNOLOGIES AIDS.-H.I.V. BIOFILM, AS
IN MY SYSTEM
WELL AS FECES, SEMINAL, VAGINAL SECRETIONS, VIOLATIVE
OF THE HEALTH & SAFETY CODE (EVEN DURING MEALS) INSTITU-
TION & WELFARE CODE VIOLATIONS WHILE KEEPING ME
"MALNOURISHED" AND "GRAVELY DISABLED" WITH NO ONE
IN PUBLIC SEEM TO SUPPORT ME BEING REMOVED OFF
THE INTERNET & IF THEY DO THEY ARE RAPED . PLUS
TORTURED BY GOV'T. OFFICIALS ALSO WITH MANY PEOPLE
KILLED AT THIS DATE/RAPE FACILITY WHICH IS UNDER
CONSTANT MONITORING OF THELTON E. HENDERSON AND
JUDGE JUDY SCHEINLIN. BOTH PARTIES ARE FAMILIAR
WITH THE PARTICULARS OF MY CASE. BOTH KNOW THE
MATTERS INDICATED ARE VIOLATIVE OF THE REHABILITA-
TION ACT AND DISCRIMINATORY TO AN EXTREME DEGREE-
FORCING ME TO-GO WITHOUT PROPER/ADEQUATE NOURISH-
MENT, BEING MADE TO INGEST TOXIC WASTE & FOOD
CONTAMINATION AND HAS THE SOLE DISCRETION TO
EXECERCISE HIS / OR HER DUTY TO UPHOLD THE LAWS
OF THE UNITED STATES CONSTITUTION. FROM THEIR
FAILURES TO RESPOND- RESPONSIBLY REFLECT UNFAIR
JUDICIAL PRACTICE, POLICY, & ETHICS + ALTOGETHER
ARBITRARY CAPRICIOUS DISCRIMINATORY GROSS GOV'T.
MISCONDUCT AT THE FEDERAL LEVEL OF JUDICIAL
REVIEW.- LEAVING ME NO ALTERNATIVE BUT TO REQUEST
CONSOLIDATION OF C07-5766 & C07-6000 AS THEY
BOTH ENTERTWINE . (CONCLUSION)
///////
* WITH RICO CHARGES

11.

# AFFIDAVIT OF MR. C. JOHNSON IN RE: C07-5766

I, MR. CHRISTOPHER JOHNSON, DO DECLARE UNDER THE PENALTY OF PERJURY THE FOREGOING IS TRUE AND CORRECT: THAT ON OR ABOUT 12-25-07, I FILED WRIT OF MANDATE FOR PROHIBITION IN MY SUPPLEMENTAL RESPONSE REQUESTING THE "RICO ACT" CHARGES BE ENACTED AGAINST GOV'T. PARTIES. BASICALLY, FOR THE LAST 3 YEARS PLUS GOV'T. HAS HELD ME FALSELY IMPRISONED AND WRONGFULLY TORTURED ME, ATTEMPTED TO MURDER ME, KILLED NUMEROUS MEMBERS OF MY FAMILY, STOLE MY SEMIN-CREATED COUNTLESS CHILDREN - SOME FOR EXPERIMENTAL PURPOSES AND DEATH. I HAVE INCURRED WRONGFUL BEATINGS & BEING PEPPER SPRAYED, FOOD CONTAMINATED, MAIL, LEGAL MAIL STOLEN, MONEY ORDERS STOLEN, STAMPS STOLEN, MAGAZINES STOLEN AND HELD IN ISOLATION AND WRONGFULLY HELD IN ADMINISTRATIVE SEGREGATION IMPROPERLY WITHOUT THE NORMAL FUNDAMENTAL FAIRNESS GIVEN TO OTHER INDIVIDUALS. ALL THE WHILE, BEING RAPED, TORTURED, EXPERIMENTED UPON WHILE ON THE INTERNET - BOTH PSYCHOLOGICALLY, MEDICALLY & SCIENTIFICALLY. I'VE BEEN WRONGFULLY KEYHEA'd TWICE MEDICATIONS (PSYCHOTROPIC) FORCED UPON ME - ATL'EAST FIVE JUDGES JUDY SCHEINLIN, T. HENDERSON, M. O. ANDERSON, W. ALSUP, AND OTHERS KNOW OF THIS MATTER AND FAIL TO PRO-VIDE RELIEF OR REMOVE ME OFF THE INTERNET. MEANWHILE, ALL MY LEGAL INHERITANCES ARE STOLEN AND MY CONSTITUTIONAL AND CIVIL RIGHTS ARE DENIED AS WELL. I'VE RECEIVED LITTLE TO NO HELP AT ALL AND CONTINUALLY PLACED IN HARMS WAY BY THE DENIAL OF MY "ESARHADDON STATUS" AS KEEPER OF THE SEAL / NEW CHIEF ADMINISTRATION. I'M CURRENTLY HELD DURESS PER MINUS AT SALINAS VALLEY STATE PRISON — SIGNED THIS 2ND OF APRIL, YEAR OF 2008        Mr Christopher Johnson

**STATE OF CALIFORNIA**
**COUNTY OF MONTEREY**

(C.C.P. SEC. 466 & 2015.5; 28 U.S.C. SEC. 1746)

I, MR. CHRISTOPHER JOHNSON declare under penalty of perjury that: I am the PLAINTIFF/PETITIONER in the above entitled action; I have read the foregoing documents and know the contents thereof and the same is true of my own knowledge, except as to matters stated therein upon information, and belief, and as to those matters, I believe they are true.

Executed this 2 ND day of APRIL , 20 08 , at Salinas Valley State Prison, Soledad, California 93960-1050.

(Signature) *Mr. Christopher Johnson*
DECLARANT/PRISONER

--------------------------------------------------------------------

PROOF OF SERVICE BY MAIL
(C.C.P. SEC 1013(a) & 2015.5; 28 U.S.C. SEC. 1746)

I, MR. CHRISTOPHER JOHNSON , am a resident of California State Prison, in the County of Monterey, State of California; I am over the age of eighteen (18) years and am/am ~~not~~ a party of the above entitled action. My state prison address is: P.O. Box 1050, Soledad, California 93960-1050.

On 4/2 , 20 08 , I served the foregoing:
MOTION TO CONSOLIDATE, RICO ACT CHARGES
C 07-5766 & C 07-6006, ORDER GRANTING RELEASE
W/ MEMORANDUM POINTS & AUTHORITIES
(Set forth exact title of document(s) served)

On the party(s) herein by placing a true copy(s) thereof, enclosed in sealed envelope(s), with postage thereof fully paid, in the United States Mail, in a deposit box so provided at Salinas Valley State Prison, Soledad, California 93960-1050.

| UNITED STATES DISTRICT COURT | ATTORNEY GENERAL | MATTHEW CATE OFFICE OF INSPECTOR GENERAL |
|---|---|---|
| NORTHERN DISTRICT OF CALIFORNIA | 455 GOLDENGATE AVE. | P.O. BOX 348780 |
| 450 GOLDEN GATE AVENUE | S.F., CA. 94102 | SACRAMENTO, CA. |
| S.F., CA. 94102 | CORR. LAW. SECT. | 95834 |

(List parties served)

There is delivery service by United States Mail at the place so addressed, and/or there is regular communication by mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: 4/2 , 20 08 ,

*Mr. Christopher Johnson*
DECLARANT/PRISONER

# MEMORANDUM POINTS & AUTHORITIES

Citation/Title
PENAL Sec. 182, Definition; punishment; venue; evidence necessary to support conviction

**\*69755 West's Ann.Cal.Penal Code § 182**

# WEST'S ANNOTATED CALIFORNIA CODES
# PENAL CODE
## PART 1. OF CRIMES AND PUNISHMENTS
## TITLE 7. OF CRIMES AGAINST PUBLIC JUSTICE
## CHAPTER 8. CONSPIRACY

*Current through Ch. 3 of 2007 Reg.Sess. urgency legislation*

## § 182. Definition; punishment; venue; evidence necessary to support conviction

(a) If two or more persons conspire:

(1) To commit any crime.

(2) Falsely and maliciously to indict another for any crime, or to procure another to be charged or arrested for any crime.

(3) Falsely to move or maintain any suit, action, or proceeding.

(4) To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses or by false promises with fraudulent intent not to perform those promises.

(5) To commit any act injurious to the public health, to public morals, or to pervert or obstruct justice, or the due administration of the laws.

(6) To commit any crime against the person of the President or Vice President of the United States, the Governor of any state or territory, any United States justice or judge, or the secretary of any of the executive departments of the United States.

They are punishable as follows:

When they conspire to commit any crime against the person of any official specified in paragraph (6), they are guilty of a felony and are punishable by imprisonment in the state prison for five, seven, or nine years.

When they conspire to commit any other felony, they shall be punishable in the same manner and to the same extent as is provided for the punishment of that felony. If the felony is one for which different punishments are prescribed for different degrees, the jury or court which finds the defendant guilty thereof shall determine the degree of the felony the defendant conspired to commit. If the degree is not so determined, the punishment for conspiracy to commit the felony shall be that prescribed for the lesser degree, except in the case of conspiracy to commit murder, in which case the punishment shall be that prescribed for murder in the first degree.

**\*69756** If the felony is conspiracy to commit two or more felonies which have different punishments

© 2007 Thomson/West. No claim to original U.S. Govt. works.

and the commission of those felonies constitute but one offense of conspiracy, the penalty shall be that prescribed for the felony which has the greater maximum term.

When they conspire to do an act described in paragraph (4), they shall be punishable by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both that imprisonment and fine.

When they conspire to do any of the other acts described in this section, they shall be punishable by imprisonment in the county jail for not more than one year, or in the state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both that imprisonment and fine.  When they receive a felony conviction for conspiring to commit identity theft, as defined in Section 530.5, the court may impose a fine of up to twenty-five thousand dollars ($25,000).

All cases of conspiracy may be prosecuted and tried in the superior court of any county in which any overt act tending to effect the conspiracy shall be done.

(b) Upon a trial for conspiracy, in a case where an overt act is necessary to constitute the offense, the defendant cannot be convicted unless one or more overt acts are expressly alleged in the indictment or information, nor unless one of the acts alleged is proved; but other overt acts not alleged may be given in evidence.

## CREDIT(S)

*(Enacted 1872. Amended by Code Am.1873-74, c. 614, p. 426, § 14; Stats.1919, c. 125, p. 170, § 1; Stats.1943, c. 554, p. 2121, § 1; Stats.1953, c. 32, p. 634, § 1; Stats.1955, c. 660, p. 1155, § 1; Stats.1965, c. 924, p. 2534, § 1; Stats.1976, c. 1139, p. 5097, § 132, operative July 1, 1977; Stats.1978, c. 579, p. 1980, § 1; Stats.1983, c. 1092, § 247, eff. Sept. 27, 1983, operative Jan. 1, 1984; Stats.1989, c. 897, § 15; Stats.2001, c. 854 (S.B.205), § 20; Stats.2002, c. 787 (S.B.1798), § 8; Stats.2002, c. 907 (A.B.1155), § 1.)*

<General Materials (GM) - References, Annotations, or Tables>

## HISTORICAL NOTES

## HISTORICAL AND STATUTORY NOTES

### 2007 Electronic Update

2001 Legislation

**\*69757** Stats.2001, c. 854 (S.B.205) made technical revisions and nonsubstantive changes to maintain the Code.

2002 Legislation

Stats.2002, c. 907 (A.B.1155), in subd. (a)(2), substituted "Falsely" for "Falsify";  and added the second sentence to the sixth paragraph after subd. (a)(6).

Subordination of legislation by Stats.2002, c. 787 (S.B.1798), to other 2002 legislation, except Stats.2002, c. 784 (S.B. 1316), see Historical and Statutory Notes under Family Code § 17400.5.

### 1999 Main Volume

As enacted in 1872, the section read:

"If two or more persons conspire:

© 2007 Thomson/West. No claim to original U.S. Govt. works.

"1. To commit any crime; or,

"2. Falsely and maliciously to indict another for any crime, or to procedure another to be charged or arrested for any crime; or,

"3. Falsely to move or maintain any suit, action, or proceeding; or,

"4. To cheat and defraud any person of any property by any means which are in themselves criminal, or by any means which, if executed, would amount to a cheat, or to obtaining money or property by false pretenses; or,

"5. To commit any act injurious to the public health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice or the due administration of the laws;

"--They are punishable by imprisonment in the County Jail not exceeding one year, or by fine not exceeding one thousand dollars."

The amendment of 1873-74 changed subd. 4 to read:

"To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses."

The amendment changed subd. 5 to read:

"To commit any act injurious to the public health, to public morals, or for the perversion of obstruction of justice, or due administration of the laws".

To the penalty provision, the amendment added "or both".

The 1919 amendment, in subd. 4, added "or by false promises with fraudulent intent not to perform such promises".

In subd. 5, the amendment substituted "or to pervert or obstruct justice" for "or for the perversion or obstruction of justice".

The amendment also changed the punishment provisions to read:

"They are punishable as follows:

"When they conspire to commit any felony, or to commit any act injurious to the public health, or to public morals, or tending to pervert or obstruct justice, or the due administration of the laws, they shall be punishable in the same manner and to the same extent as in this code provided for the punishment of the commission of the said felony or act, respectively.

**\*69758** "When they conspire to do any of the other acts described in this section they shall be punishable by imprisonment in the county jail or state penitentiary not exceeding two years, or by a fine not exceeding five thousand dollars, or both, and cases of such conspiracy may be prosecuted and tried in the superior court of any county in which any overt act tending to effect such conspiracy shall be done."

The 1943 amendment rewrote the punishment provisions to read:

"They are punishable as follows:

"When they conspire to commit any felony, they shall be punishable in the same manner and to the same extent as is provided for the punishment of the said felony.

"When they conspire to do any of the other acts described in this section they shall be punishable by imprisonment in the county jail for not more than one year, or in the State prison for not more than three years, or by a fine not exceeding five thousand dollars ($5,000) or both.

"All cases of conspiracy may be prosecuted and tried in the superior court of any county in which any overt act tending to effect such conspiracy shall be done."

The 1953 amendment added subd. 6, and, in the punishment provisions, it added the paragraph dealing with an offense described in subd. 6, and in the following paragraph, punishment was provided when they conspire to commit any "other" felony.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

PENAL Sec. 182, Definition; punishment; venue; evidence necessary to support conviction       **Page 4**

The material added in 1953 was taken from Stats.1903, c. 55, p. 58, § 1.

In the second paragraph of the punishment provisions, the 1955 amendment inserted the second and third sentences dealing with a felony for which different punishments are prescribed for different degrees. The 1955 amendment also inserted the third paragraph of the punishment provisions dealing with a conspiracy to commit two or more felonies which have different punishments.

Prior to the 1965 amendment, the fourth paragraph of the penalty provisions read as follows:

"When they conspire to do any of the other acts described in this section they shall be punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than three years, or by a fine not exceeding five thousand dollars ($5,000) or both."

The 1965 amendment inserted the paragraph of the punishment provisions dealing with acts described in subd. 4.

The 1976 amendment substituted, in the first paragraph of the punishment provisions, "five, six or seven years" for "not less than ten years"; deleted, in the fourth paragraph of the punishment provisions, "for not more than ten years" following "prison"; and, in the fifth paragraph of the punishment provisions, deleted "for not more than three years" following "prison".

The 1978 amendment changed terms of imprisonment from "five, six or seven" to "five, seven or nine" years in first paragraph of provisions on punishment.

**\*69759** Section 48 of Stats.1978, c. 579, p. 1998, provides:

"This act shall apply prospectively only for crimes committed on or after January 1, 1979."

The 1983 amendment increased, in the fourth paragraph of the punishment provisions, the maximum fine from $5,000 to $10,000.

The 1989 amendment added subd. (b) relating to evidence of overt acts to support conviction. Those provisions had previously been found at Penal Code § 1104.

Derivation: Stats.1850, c. 99, p. 242, § 102; Stats.1903, c. 55, p. 58, § 1.

## REFERENCES

## CROSS REFERENCES

Accomplice defined; conviction on uncorroborated testimony of accomplice, see Penal Code § 1111.
Admissibility of evidence in conspiracy, see Evidence Code § 1223.
Conspiracy against trade, see Business and Professions Code § 16755.
Conspiracy to cheat or defraud, accusatory pleading, see Penal Code § 967.
Conspiracy to furnish false or forged telegraph or telephone message, intent, see Penal Code § 474.
Contractors,
    Conspiring to violate licensing provisions, see Business and Professions Code § 7028.
    Separate licensees engaging in joint venture without additional license, see Business and Professions Code § 7029.
False pretenses, punishment for obtaining money, labor or property by, see Penal Code § 532.
Felony, classification of offenses, see Penal Code § 17.
Forfeitures of money, negotiable instruments, securities, etc., see Health and Safety Code § 11470.
Indictment for public offense, see Penal Code § 917.
Insurance securities, conspiring to violate permit or order of commissioner or insurance provisions, see Insurance Code § 833.
**\*69760** Licensees, conspiracies with unlicensed persons, see Business and Professions Code § 125.
Livestock, combinations to prevent sale, see Business and Professions Code § 16800 et seq.
Overt act necessary, see Penal Code § 184.
Parties to crimes, generally, see Penal Code § 30 et seq.
Principals of crimes, liability, see Penal Code § 31.
Public nuisance, acts or things injurious to public health as, see Penal Code § 370.
Sabotage, conspiracy to commit, see Military and Veterans Code § 1674.
Seizures of things of value and believed to be forfeitable, see Health and Safety Code § 11488.
Trade disputes, agreements with respect to, see Labor Code § 1110.
Unemployment compensation, conspiring to aid unauthorized person to obtain benefits, see Unemployment Insurance Code §

© 2007 Thomson/West. No claim to original U.S. Govt. works.

2107.
Wiretapping, conspiracy to make unauthorized connection, see Penal Code § 631.

## LAW REVIEW AND JOURNAL COMMENTARIES

Absolute privilege for defamatory pleadings barring malicious prosecution action. 5 Stan.L.Rev. 151 (1952).

Antitrust symposium: Effectiveness of private treble damages action as an antitrust enforcement mechanism. Paul S. Ferber, John V. Tunney, Baddia J. Rashid, Manuel L. Real, Burt Pines, William Breit, Maxwell M. Blecher and Max L. Gillam, 8 Sw.U.L.Rev. 505 (1976).

Complicity in a conspiracy as an approach to conspiratorial liability. 16 UCLA L.Rev. 155 (1968).

Conspiracy: Ninth circuit survey, 1978, 12 Loy.L.A.L.Rev. 594 (1979).

Conspiracy and conspirators in California. 26 S.Cal.L.Rev. 64 (1952).

Conspiracy by spouses despite concept of unity of husband and wife. (1956) 42 A.B.A.J. 162.

**\*6976**1 Conspiracy conviction upheld where citizens married aliens for sole purpose of procuring admission of the aliens to United States. (1953) 39 A.B.A.J. 492.

Conspiracy in homicide. Benjamin S. Lin, 36 Loy.L.A.L.Rev. 1541 (2003).

Conspiracy to commit burglary. 25 S.Cal.L.Rev. 75 (1951).

Conspiracy under Penal Code, § 182(2). 7 S.Cal.L.Rev. 113 (1933).

Conspiracy under the proposed California criminal code. 19 UCLA L.Rev. 603 (1972).

Constitutionality of §§ 9a and 9b of the California alien land law as applied in conspiracy prosecution. 22 Cal.L.Rev. 422 (1934).

Control of organized crime in America. 4 Stan.L.Rev. 52 (1951).

Control of the malicious defendant. 2 Stan.L.Rev. 184 (1949).

Criminal conspiracy. (1978) 10 U.West L.A.L.Rev. 159.

Criminal liability in treatment of irreversibly comatose patients. George A. Oakes (May 1984) 7 L.A.Law. 35.

Dilemma of consumer fraud: Prosecute or mediate. Eric H. Steele (1975) 61 A.B.A.J. 1230.

Dismissal upon preliminary hearing as favorable termination. 15 S.Cal.L.Rev. 279 (1942).

Doctrine of entrapment with reference to the case of United States and Woo Wai. 3 Cal.L.Rev. 476 (1915).

Duration of conspiracy. 20 S.Cal.L.Rev. 219 (1947).

Effect of settlement under protest on right of action for malicious prosecution. 23 S.Cal.L.Rev. 622 (1950).

Entry of nolle prosequi as favorable termination of criminal prosecution as basis for action for malicious prosecution. 3 S.Cal.L.Rev. 230 (1930).

Extradition as a malicious prosecution. 5 Stan.L.Rev. 560 (1953).

False promises as false pretenses. 43 Cal.L.Rev. 719 (1955).

Former jeopardy, acquittal on charge of conspiracy to give bribes as barring subsequent prosecution for bribery. 4 S.Cal.L.Rev. 240 (1931).

© 2007 Thomson/West. No claim to original U.S. Govt. works.

PENAL Sec. 182, Definition;  punishment;  venue;  evidence necessary to support conviction      **Page 6**

*69762 Guilt by association:  Proposition 21's gang conspiracy law will increase youth violence in California.  37 U.S.F.L.Rev. 191 (2002).

Implied conspiracy to prevent detection and punishment.  23 S.Cal.L.Rev. 102 (1949).

Incriminating criminal evidence:  Practical solutions.  Barry S. Martin, 15 Pac.L.J. 807 (1984).

Intracorporate plurality in criminal conspiracy law.  Sarah N. Welling, 33 Hastings L.J. 1155 (1982).

Justice Traynor and the conflict of laws:  Criminal matters.  Brainerd Currie, 13 Stan.L.Rev. 745 (1961).

"Kick-Back-Racket-Act", what constitutes conspiracy by labor union officials to violate the act.  19 S.Cal.L.Rev. 447 (1946).

Knowledge of conspiracy as essential element.  15 S.Cal.L.Rev. 114 (1941).

Liability of officers for malicious prosecution.  12 S.Cal.L.Rev. 216 (1939).

Malicious prosecution, probable cause.  10 S.Cal.L.Rev. 218 (1937).

Malicious prosecution of civil litigation wrongfully instigated.  20 S.Cal.L.Rev. 115 (1946).

Marital status of husband and wife as basis for claim of immunity from prosecution for conspiracy.  12 UCLA L.Rev. 1466 (1965).

Mass demonstrations and criminal conspiracies.  16 Hastings L.J. 465 (1965).

Merger of conspiracy with object of conspiracy.  26 S.Cal.L.Rev. 64, 71 (1952).

Nature of conspiracy under California and other state statutes.  26 S.Cal.L.Rev. 64, 65 (1952).

Object of conspiracy.  26 S.Cal.L.Rev. 64, 69 (1952).

Probable cause and malicious prosecution.  12 Cal.L.Rev. 310 (1924).

Problems created by reliance upon specific-general intent dichotomy.  63 Cal.L.Rev. 1357 (1975).

Procedural safeguards for the mass conspiracy trial.  Milton R. Wessel (1962) 48 A.B.A.J. 628.

Proceeding on application for broker's license as basis for malicious prosecution action.  15 Cal.L.Rev. 518 (1927).

*69763 Prosecution of principals in "pornographic" film productions for commission of, or conspiracy to commit, proscribed sex acts.  21 UCLA L.Rev. 213.

Quackery under Penal Code.  11 Stan.L.Rev. 287 (1959).

Restrictions on unorthodox health treatment.  24 UCLA L.Rev. 647 (1977).

Saving clause in statute relating to conspiracy to compound misdemeanors, § 182 of the Penal Code, as amended in 1943.  19 S.Cal.L.Rev. 60 (1945).

Solicitation in California to do a criminal act outside the state.  7 Hastings L.J. 206.

Spying game.  Scott Winokur, 13 Cal.Law. 65 (Dec. 1993.).

Statute of limitations for conspiracy.  66 Cal.L.Rev. 314 (1978).

Trade unions, application of theory of conspiracy to organization and activities of.  5 S.Cal.L.Rev. 105 (1931).

Unnecessary crime of conspiracy.  Phillip E. Johnson, 61 Cal.L.Rev. 1137 (1973).

© 2007 Thomson/West. No claim to original U.S. Govt. works.

PENAL Sec. 182, Definition; punishment; venue; evidence necessary to support conviction    **Page 7**

Wharton's rule and exceptions. 23 S.Cal.L.Rev. 262 (1950).

Work of the 1943 Legislature, conspiracy. 17 S.Cal.L.Rev. 1 (1943).

## LIBRARY REFERENCES

### 1999 Main Volume

Conspiracy ☞23, 51.
Criminal Law ☞106.
Westlaw Topic Nos. 91, 110.
C.J.S. Conspiracy §§ 34, 35, 96.
C.J.S. Criminal Law §§ 172, 174.
Background and general effect of 1965 amendment. Rev. of 1965 Code Leg. (Cont.Educ. of Bar, 1965) page 174.
Cal Digest of Official Reports 3d Series, Conspiracy §§ 1 et seq.

## RESEARCH REFERENCES

ALR Library

135 ALR, Federal 619, Consideration of Offenses Committed While a Juvenile in the Computation of Criminal History Under United States Sentencing Guideline (U.S.S.G. § 4a1.2).

*69764 8 ALR 6th 265, Propriety of Lesser-Included-Offense Charge in State Prosecution of Narcotics Defendant--Methamphetamine Cases.

97 ALR 5th 201, Conviction or Acquittal in Federal Court as Bar to Prosecution in State Court for State Offense Based on Same Facts--Modern View.

36 ALR 5th 161, State Statutes or Ordinances Requiring Persons Previously Convicted of Crime to Register With Authorities.

62 ALR 2nd 1369, When Does Statute of Limitations Begin to Run Against Civil Action or Criminal Prosecution for Conspiracy.

169 ALR 1419, Search Incident to One Offense as Justifying Seizure of Instruments of or Articles Connected With Another Offense.

159 ALR 201, Comment Note.--Cross-Examination to Dispel Favorable Inference Which Jury Might Draw from Appearance of Witness on Witness-Stand.

161 ALR 233, Right to Cross-Examine Accused as to Previous Prosecution For, or Conviction Of, Crime, for Purpose of Affecting His Credibility.

151 ALR 1049, Constitutionality, Construction, and Application of Statutory Provisions Regarding Publicity or Confidential and Privileged Character of Income Tax Information or Returns.

153 ALR 1218, Burden of Averment and Proof as to Exception in Criminal Statute on Which the Prosecution is Based.

131 ALR 917, Right to Severance Where Two or More Persons Are Jointly Accused.

131 ALR 1322, Criminal Responsibility of One Co-Operating in Offense Which He is Incapable of Committing Personally.

134 ALR 874, Offense of Obtaining Property by False Pretenses Predicated Upon Transaction Involving Conditional Sale.

129 ALR 1296, Comment Note.--Illustrations of Distinction, as Regards Search and Seizure, Between Papers or Other Articles Which Merely Furnish Evidence of Crime, and the Actual Instrumentalities of Crime.

112 ALR 983, Identity, as Regards Former Jeopardy, of Offenses Charged in Different Indictments or Informations for Conspiracy.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

PENAL Sec. 182, Definition;  punishment;  venue;  evidence necessary to support conviction          **Page 8**

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*173249 18 U.S.C.A. § 2340**

# UNITED STATES CODE ANNOTATED
## TITLE 18. CRIMES AND CRIMINAL PROCEDURE
## PART I--CRIMES
## CHAPTER 113C--TORTURE

*Current through P.L. 109-482 (End) approved 1-15-07*

## § 2340. Definitions

As used in this chapter--

(1) "torture" means an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control;

(2) "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from--

(A) the intentional infliction or threatened infliction of severe physical pain or suffering;

(B) the administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

(C) the threat of imminent death; or

(D) the threat that another person will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind-altering substances or other procedures calculated to disrupt profoundly the senses or personality; and

(3) "United States" means the several States of the United States, the District of Columbia, and the commonwealths, territories, and possessions of the United States.

### CREDIT(S)

*(Added Pub.L. 103-236, Title V, § 506(a), Apr. 30, 1994, 108 Stat. 463, and amended Pub.L. 103-415, § 1(k), Oct. 25, 1994, 108 Stat. 4301; Pub.L. 103-429, § 2(2), Oct. 31, 1994, 108 Stat. 4377; Pub.L. 108-375, Div. A, Title X, § 1089, Oct. 28, 2004, 118 Stat. 2067.)*

<General Materials (GM) - References, Annotations, or Tables>
**\*173250**

### HISTORICAL NOTES

### HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1994 Acts. Senate Report No. 103-107 and House Conference Report No. 103-482, see 1994 U.S. Code Cong. and Adm. News, p. 302.

House Report No. 103-831, see 1994 U.S. Code Cong. and Adm. News, p. 3579.

2004 Acts. House Conference Report No. 108-767, see 2004 U.S. Code Cong. and Adm. News, p. 1961.

Statement by President, see 2004 U.S. Code Cong. and Adm. News, p. S37.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

18 USCA Sec. 2340, Definitions                                                    **Page 2**

Amendments
    2004 Amendments. Par. (3). Pub.L. 108-375, § 1089, rewrote par. (3), which formerly read: "'United States' includes all
areas under the jurisdiction of the United States including any of the places described in sections 5 and 7 of this title and section
46501(2) of title 49."

    1994 Amendments. Par. (1). Pub.L. 103-415, § 1(k), substituted "within his" for "with".

    Par. (3). Pub.L. 103-429, § 2(2), substituted "section 46501(2) of title 49" for "section 101(38) of the Federal Aviation Act
of 1958 (49 U.S.C. App. 1301(38))".

Effective and Applicability Provisions
    1994 Acts. Section 506(c) of Pub.L. 103-236 provided that: "The amendments made by this section [enacting this chapter]
shall take effect on the later of--

    "**(1)** the date of enactment of this Act [Apr. 30, 1994]; or

    "**(2)** the date on which the United States has become a party to the Convention Against Torture and Other Cruel, Inhuman or
Degrading Treatment or Punishment."

    [Convention entered into force with respect to the United States Nov. 20, 1994, Treaty Doc. 100-20.]
**\*173251**

## REFERENCES

## LIBRARY REFERENCES

American Digest System

Mayhem ☞1.
        Key Number System Topic No. 256.

## RESEARCH REFERENCES

    Encyclopedias

    Am. Jur. 2d Aliens and Citizens § 1431, Genocide, Torture or Killing.

    Treatises and Practice Aids

    Federal Procedure, Lawyers Edition § 45:1120, Eligibility for Waiver of Most Other Grounds for Inadmissibility.

    Immigration Law Service 2d PSD INA § 212, General Classes of Aliens Ineligible to Receive Visas and Ineligible for
Admission; Waivers of Inadmissibility.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*174575 18 U.S.C.A. § 3006A**

## UNITED STATES CODE ANNOTATED
## TITLE 18. CRIMES AND CRIMINAL PROCEDURE
## PART II--CRIMINAL PROCEDURE
## CHAPTER 201--GENERAL PROVISIONS

*Current through P.L. 109-482 (End) approved 1-15-07*

### § 3006A. Adequate representation of defendants

**(a) Choice of plan.**--Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section. Representation under each plan shall include counsel and investigative, expert, and other services necessary for adequate representation. Each plan shall provide the following:

(1) Representation shall be provided for any financially eligible person who--

(A) is charged with a felony or a Class A misdemeanor;

(B) is a juvenile alleged to have committed an act of juvenile delinquency as defined in section 5031 of this title;

(C) is charged with a violation of probation;

(D) is under arrest, when such representation is required by law;

(E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release;

(F) is subject to a mental condition hearing under chapter 313 of this title;

(G) is in custody as a material witness;

(H) is entitled to appointment of counsel under the sixth amendment to the Constitution;

(I) faces loss of liberty in a case, and Federal law requires the appointment of counsel; or

(J) is entitled to the appointment of counsel under section 4109 of this title.

**\*174576** (2) Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who--

(A) is charged with a Class B or C misdemeanor, or an infraction for which a sentence to confinement is authorized; or

(B) is seeking relief under section 2241, 2254, or 2255 of title 28.

(3) Private attorneys shall be appointed in a substantial proportion of the cases. Each plan may include, in addition to the provisions for private attorneys, either of the following or both:

(A) Attorneys furnished by a bar association or a legal aid agency,

(B) Attorneys furnished by a defender organization established in accordance with the provisions of subsection (g).

Prior to approving the plan for a district, the judicial council of the circuit shall supplement the plan with provisions for representation on appeal. The district court may modify the plan at any time with the approval of the judicial council of the circuit. It shall modify the plan when directed by the judicial council of the circuit. The district court shall notify the Administrative Office of the United States Courts of any modification of its plan.

**(b) Appointment of counsel.**--Counsel furnishing representation under the plan shall be selected from a panel of attorneys designated or approved by the court, or from a bar association, legal aid agency, or defender organization furnishing representation pursuant to the plan. In every case in which a person entitled to representation under a plan approved under subsection (a) appears without counsel, the

© 2007 Thomson/West. No claim to original U.S. Govt. works.

United States magistrate judge or the court shall advise the person that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the person waives representation by counsel, the United States magistrate judge or the court, if satisfied after appropriate inquiry that the person is financially unable to obtain counsel, shall appoint counsel to represent him. Such appointment may be made retroactive to include any representation furnished pursuant to the plan prior to appointment. The United States magistrate judge or the court shall appoint separate counsel for persons having interests that cannot properly be represented by the same counsel, or when other good cause is shown.

**\*174577 (c) Duration and substitution of appointments.**--A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings. If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate. If at any stage of the proceedings, including an appeal, the United States magistrate judge or the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel as provided in subsection (b) and authorize payment as provided in subsection (d), as the interests of justice may dictate. The United States magistrate judge or the court may,

hour for time expended in court or before a United States magistrate judge and $40 per hour for time reasonably expended out of court, unless the Judicial Conference determines that a higher rate of not in excess of $75 per hour is justified for a circuit or for particular districts within a circuit, for time expended in court or before a United States magistrate judge and for time expended out of court. The Judicial Conference shall develop guidelines for determining the maximum hourly rates for each circuit in accordance with the preceding sentence, with variations by district, where appropriate, taking into account such factors as the minimum range of the prevailing hourly rates for qualified attorneys in the district in which the representation is provided and the recommendations of the judicial councils of the circuits. Not less than 3 years after the effective date of the Criminal Justice Act Revision of 1986, the Judicial Conference is authorized to raise the maximum hourly rates specified in this paragraph up to the aggregate of the overall average percentages of the adjustments in the rates of pay under the General Schedule made pursuant to section 5305 of title 5 on or after such effective date. After the rates are raised under the preceding sentence, such maximum hourly rates may be raised at intervals of not less than 1 year each, up to the aggregate of the overall average percentages of such adjustments made since the last raise was made under this paragraph. Attorneys may be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the United States magistrate [FN1] or the court, and the costs of defending actions alleging malpractice of counsel in furnishing representational services under this section. No reimbursement





18 USCA Sec. 3006A, Adequate representation of defendants

United States magistrate judge or the court shall advise the person that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the person waives representation by counsel, the United States magistrate judge or the court, if satisfied after appropriate inquiry that the person is financially unable to obtain counsel, shall appoint counsel to represent him. Such appointment may be made retroactive to include any representation furnished pursuant to the plan prior to appointment. The United States magistrate judge or the court shall appoint separate counsel for persons having interests that cannot properly be represented by the same counsel, or when other good cause is shown.

*174577 **(c) Duration and substitution of appointments.**--A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings. If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate. If at any stage of the proceedings, including an appeal, the United States magistrate judge or the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel as provided in subsection (b) and authorize payment as provided in subsection (d), as the interests of justice may dictate. The United States magistrate judge or the court may, in the interests of justice, substitute one appointed counsel for another at any stage of the proceedings.

**(d) Payment for representation.--**

(1) **Hourly rate.**--Any attorney appointed pursuant to this section or a bar association or legal aid agency or community defender organization which has provided the appointed attorney shall, at the conclusion of the representation or any segment thereof, be compensated at a rate not exceeding $60 per

hour for time expended in court or before a United States magistrate judge and $40 per hour for time reasonably expended out of court, unless the Judicial Conference determines that a higher rate of not in excess of $75 per hour is justified for a circuit or for particular districts within a circuit, for time expended in court or before a United States magistrate judge and for time expended out of court. The Judicial Conference shall develop guidelines for determining the maximum hourly rates for each circuit in accordance with the preceding sentence, with variations by district, where appropriate, taking into account such factors as the minimum range of the prevailing hourly rates for qualified attorneys in the district in which the representation is provided and the recommendations of the judicial councils of the circuits. Not less than 3 years after the effective date of the Criminal Justice Act Revision of 1986, the Judicial Conference is authorized to raise the maximum hourly rates specified in this paragraph up to the aggregate of the overall average percentages of the adjustments in the rates of pay under the General Schedule made pursuant to section 5305 of title 5 on or after such effective date. After the rates are raised under the preceding sentence, such maximum hourly rates may be raised at intervals of not less than 1 year each, up to the aggregate of the overall average percentages of such adjustments made since the last raise was made under this paragraph. Attorneys may be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the United States magistrate [FN1] or the court, and the costs of defending actions alleging malpractice of counsel in furnishing representational services under this section. No reimbursement for expenses in defending against malpractice claims shall be made if a judgment of malpractice is rendered against the counsel furnishing representational services under this section. The United States magistrate [FN1] or the court shall make determinations relating to reimbursement of expenses under this paragraph.

*174578 **(2) Maximum amounts.**--For representation of a defendant before the United

© 2007 Thomson/West. No claim to original U.S. Govt. works.

States magistrate judge or the district court, or both, the compensation to be paid to an attorney or to a bar association or legal aid agency or community defender organization shall not exceed $7,000 for each attorney in a case in which one or more felonies are charged, and $2,000 for each attorney in a case in which only misdemeanors are charged. For representation of a defendant in an appellate court, the compensation to be paid to an attorney or to a bar association or legal aid agency or community defender organization shall not exceed $5,000 for each attorney in each court. For representation of a petitioner in a non-capital habeas corpus proceeding, the compensation for each attorney shall not exceed the amount applicable to a felony in this paragraph for representation of a defendant before a judicial officer of the district court. For representation of such petitioner in an appellate court, the compensation for each attorney shall not exceed the amount applicable for representation of a defendant in an appellate court. For representation of an offender before the United States Parole Commission in a proceeding under section 4106A of this title, the compensation shall not exceed $1,500 for each attorney in each proceeding;   for representation of an offender in an appeal from a determination of such Commission under such section, the compensation shall not exceed $5,000 for each attorney in each court. For any other representation required or authorized by this section, the compensation shall not exceed $1,500 for each attorney in each proceeding.

(3) **Waiving maximum amounts.**--Payment in excess of any maximum amount provided in paragraph (2) of this subsection may be made for extended or complex representation whenever the court in which the representation was rendered, or the United States magistrate judge if the representation was furnished exclusively before him, certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit. The chief judge of the circuit may delegate such approval authority to an active

circuit judge.

(4) **Disclosure of fees.--**

(A)   **In   general.**--Subject   to subparagraphs (B) through (E), the amounts paid under this subsection for services in any case shall be made available to the public by the court upon the court's approval of the payment.

(B)   **Pre-trial   or   trial   in progress.**--If a trial is in pre-trial status or still in progress and after considering the defendant's interests as set forth in subparagraph (D), the court shall--

(i) redact any detailed information on the payment voucher provided by defense counsel to justify the expenses to the court;  and

(ii) make public only the amounts approved for payment to defense counsel by dividing those amounts into the following categories:

(I) Arraignment and or plea.

(II)   Bail   and   detention hearings.

(III) Motions.

(IV) Hearings.

(V)   Interviews   and conferences.

(VI) Obtaining and reviewing records.

(VII) Legal research and brief writing.

(VIII) Travel time.

(IX) Investigative work.

(X) Experts.

**\*174579   (XI)**   Trial   and appeals.

(XII) Other.

(C) **Trial completed.--**

(i) **In general.**--If a request for payment is not submitted until after the completion of the trial and subject to consideration of the defendant's interests as set forth in subparagraph (D), the court shall make available to the public an unredacted copy of the expense voucher.

(ii) **Protection of the rights of the defendant.**--If the court determines that defendant's interests as set forth in subparagraph (D) require a limited disclosure, the court shall disclose amounts as provided in subparagraph

© 2007 Thomson/West. No claim to original U.S. Govt. works.

(B).

**(D)    Considerations.**--The interests referred to in subparagraphs (B) and (C) are--

**(i)** to protect any person's 5th amendment right against self-incrimination;

**(ii)** to protect the defendant's 6th amendment rights to effective assistance of counsel;

**(iii)** the defendant's attorney-client privilege;

**(iv)** the work product privilege of the defendant's counsel;

**(v)** the safety of any person; and

**(vi)** any other interest that justice may require, except that the amount of the fees shall not be considered a reason justifying any limited disclosure under section 3006A(d)(4) of title 18, United States Code.

**(E)    Notice.**--The court shall provide reasonable notice of disclosure to the counsel of the defendant prior to the approval of the payments in order to allow the counsel to request redaction based on the considerations set forth in subparagraph (D).    Upon completion of the trial, the court shall release unredacted copies of the vouchers provided by defense counsel to justify the expenses to the court.  If there is an appeal, the court shall not release unredacted copies of the vouchers provided by defense counsel to justify the expenses to the court until such time as the appeals process is completed, unless the court determines that none of the defendant's interests set forth in subparagraph (D) will be compromised.

**\*174580  (F)  Effective date.**-- The amendment made by paragraph (4) shall become effective 60 days after enactment of this Act, will apply only to cases filed on or after the effective date, and shall be in effect for no longer than 24 months after the effective date.

**(5)  Filing claims.**--A separate claim for compensation and reimbursement shall be made to the district court for representation before the United States magistrate judge and the court, and to each appellate court before which the attorney provided representation to the person involved.    Each claim shall be supported by a sworn written statement specifying the time expended, services rendered, and expenses incurred while the case was pending before the United States magistrate judge and the court, and the compensation and reimbursement applied for or received in the same case from any other source.    The court shall fix the compensation and reimbursement to be paid to the attorney or to the bar association or legal aid agency or community defender organization which provided the appointed attorney.    In cases where representation is furnished exclusively before a United States magistrate judge, the claim shall be submitted to him and he shall fix the compensation and reimbursement to be paid.    In cases where representation is furnished other than before the United States magistrate judge, the district court, or an appellate court, claims shall be submitted to the district court which shall fix the compensation and reimbursement to be paid.

**(6)  New trials.**--For purposes of compensation and other payments authorized by this section, an order by a court granting a new trial shall be deemed to initiate a new case.

**(7)  Proceedings  before  appellate courts.**--If a person for whom counsel is appointed under this section appeals to an appellate court or petitions for a writ of certiorari, he may do so without prepayment of fees and costs or security therefor and without filing the affidavit required by section 1915(a) of title 28.

**(e) Services other than counsel.**--

**(1) Upon request.**--Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application.  Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

**\*174581  (2) Without prior request.**--

© 2007 Thomson/West. No claim to original U.S. Govt. works.

(A) Counsel appointed under this section may obtain, subject to later review, investigative, expert, and other services without prior authorization if necessary for adequate representation. Except as provided in subparagraph (B) of this paragraph, the total cost of services obtained without prior authorization may not exceed $500 and expenses reasonably incurred.

(B) The court, or the United States magistrate judge (if the services were rendered in a case disposed of entirely before the United States magistrate judge), may, in the interest of justice, and upon the finding that timely procurement of necessary services could not await prior authorization, approve payment for such services after they have been obtained, even if the cost of such services exceeds $500.

(3)    **Maximum    amounts.**-- Compensation to be paid to a person for services rendered by him to a person under this subsection, or to be paid to an organization for services rendered by an employee thereof, shall not exceed $1,600, exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by the court, or by the United States magistrate judge if the services were rendered in connection with a case disposed of entirely before him, as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit. The chief judge of the circuit may delegate such approval authority to an active circuit judge.

(4) **Disclosure of fees.**--The amounts paid under this subsection for services in any case shall be made available to the public.

(f) **Receipt of other payments.**--Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to subsection (e) to render investigative, expert, or other services, or to the court for

deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section. Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant.

(g) **Defender organization.**--

(1) **Qualifications.**--A district or a part of a district in which at least two hundred persons annually require the appointment of counsel may establish a defender organization as provided for either under subparagraphs (A) or (B) of paragraph (2) of this subsection or both. Two adjacent districts or parts of districts may aggregate the number of persons required to be represented to establish eligibility for a defender organization to serve both areas. In the event that adjacent districts or parts of districts are located in different circuits, the plan for furnishing representation shall be approved by the judicial council of each circuit.

\*174582 (2) **Types of defender organizations.**--

(A) **Federal Public Defender Organization.**--A Federal Public Defender Organization shall consist of one or more full-time salaried attorneys. An organization for a district or part of a district or two adjacent districts or parts of districts shall be supervised by a Federal Public Defender appointed by the court of appeals of the circuit, without regard to the provisions of title 5 governing appointments in the competitive service, after considering recommendations from the district court or courts to be served. Nothing contained herein shall be deemed to authorize more than one Federal Public Defender within a single judicial district. The Federal Public Defender shall be appointed for a term of four years, unless sooner removed by the court of appeals of the circuit for incompetency, misconduct in office, or neglect of duty. Upon the expiration of his term, a Federal Public Defender may, by a majority vote of the judges of the court of appeals, continue to perform the duties of his office until his

© 2007 Thomson/West. No claim to original U.S. Govt. works.

successor is appointed, or until one year after the expiration of such Defender's term, whichever is earlier. The compensation of the Federal Public Defender shall be fixed by the court of appeals of the circuit at a rate not to exceed the compensation received by the United States attorney for the district where representation is furnished or, if two districts or parts of districts are involved, the compensation of the higher paid United States attorney of the districts. The Federal Public Defender may appoint, without regard to the provisions of title 5 governing appointments in the competitive service, full-time attorneys in such number as may be approved by the court of appeals of the circuit and other personnel in such number as may be approved by the Director of the Administrative Office of the United States Courts. Compensation paid to such attorneys and other personnel of the organization shall be fixed by the Federal Public Defender at a rate not to exceed that paid to attorneys and other personnel of similar qualifications and experience in the Office of the United States attorney in the district where representation is furnished or, if two districts or parts of districts are involved, the higher compensation paid to persons of similar qualifications and experience in the districts. Neither the Federal Public Defender nor any attorney so appointed by him may engage in the private practice of law. Each organization shall submit to the Director of the Administrative Office of the United States Courts, at the time and in the form prescribed by him, reports of its activities and financial position and its proposed budget. The Director of the Administrative Office shall submit, in accordance with section 605 of title 28, a budget for each organization for each fiscal year and shall out of the appropriations therefor make payments to and on behalf of each organization. Payments under this subparagraph to an organization shall be in lieu of payments under subsection (d) or (e).

**\*174583    (B)    Community Defender Organization.**--A Community Defender Organization shall be a nonprofit defense counsel service established and administered by any group authorized by the plan to provide representation. The organization shall be eligible to furnish attorneys and receive payments under this section if its bylaws are set forth in the plan of the district or districts in which it will serve. Each organization shall submit to the Judicial Conference of the United States an annual report setting forth its activities and financial position and the anticipated caseload and expenses for the next fiscal year. Upon application an organization may, to the extent approved by the Judicial Conference of the United States:

**(i)** receive an initial grant for expenses necessary to establish the organization; and

**(ii)** in lieu of payments under subsection (d) or (e), receive periodic sustaining grants to provide representation and other expenses pursuant to this section.

**(3) Malpractice and negligence suits.**-- The Director of the Administrative Office of the United States Courts shall, to the extent the Director considers appropriate, provide representation for and hold harmless, or provide liability insurance for, any person who is an officer or employee of a Federal Public Defender Organization established under this subsection, or a Community Defender Organization established under this subsection which is receiving periodic sustaining grants, for money damages for injury, loss of liberty, loss of property, or personal injury or death arising from malpractice or negligence of any such officer or employee in furnishing representational services under this section while acting within the scope of that person's office or employment.

**(h) Rules and reports.**--Each district court and court of appeals of a circuit shall submit a report on the appointment of counsel within its jurisdiction to the Administrative Office of the United States Courts in such form and at such times as the Judicial Conference of the United

© 2007 Thomson/West. No claim to original U.S. Govt. works.

States may specify. The Judicial Conference of the United States may, from time to time, issue rules and regulations governing the operation of plans formulated under this section.

(i) **Appropriations.**--There are authorized to be appropriated to the United States courts, out of any money in the Treasury not otherwise appropriated, sums necessary to carry out the provisions of this section, including funds for the continuing education and training of persons providing representational services under this section. When so specified in appropriation acts, such appropriations shall remain available until expended. Payments from such appropriations shall be made under the supervision of the Director of the Administrative Office of the United States Courts.

(j) **Districts included.**--As used in this section, the term "district court" means each district court of the United States created by chapter 5 of title 28, the District Court of the Virgin Islands, the District Court for the Northern Mariana Islands, and the District Court of Guam.

*174584 **(k) Applicability in the District of Columbia.**--The provisions of this section shall apply in the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit. The provisions of this section shall not apply to the Superior Court of the District of Columbia and the District of Columbia Court of Appeals.

## CREDIT(S)

*(Added Pub.L. 88-455, § 2, Aug. 20, 1964, 78 Stat. 552, and amended Pub.L. 90-578, Title III, § 301(a)(1), Oct. 17, 1968, 82 Stat. 1115; Pub.L. 91-447, § 1, Oct. 14, 1970, 84 Stat. 916; Pub.L. 93-412, § 3, Sept. 3, 1974, 88 Stat. 1093; Pub.L. 97-164, Title II, § 206(a), (b), Apr. 2, 1982, 96 Stat. 53; Pub.L. 98-473, Title II, §§ 223(e), 405, 1901, Oct. 12, 1984, 98 Stat. 2028, 2067, 2185; Pub.L. 99-651, Title I, §§ 102, 103, Nov. 14, 1986, 100 Stat. 3642, 3645; Pub.L. 100-182, § 19, Dec. 7, 1987, 101 Stat. 1270; Pub.L. 100-690, Title VII, § 7101(f), Nov. 18, 1988, 102 Stat. 4416; Pub.L. 101-650, Title III, § 321, Dec. 1, 1990, 104 Stat. 5117; Pub.L. 104-132, Title IX, § 903(a), Apr. 24, 1996, 110 Stat. 1318; Pub.L. 105-119, Title III, § 308(a), Nov. 26, 1997, 111 Stat. 2493, 2494; Pub.L. 106-113, § 1000(a)(1) [Title III, § 308(a)], Nov. 29, 1999, 113 Stat. 1535, 1501A-37; Pub.L. 106-518, Title II, §§ 210, 211, Nov. 13, 2000, 114 Stat. 2415; Pub.L. 108-447, Div. B, Title III, § 304, Dec. 8, 2004, 118 Stat. 2894.)*

[FN1] So in original. Probably should be "United States

magistrate judge".

<General Materials (GM) - References, Annotations, or Tables>

## HISTORICAL NOTES

## HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports
  1964 Acts. House Report No. 864 and Conference Report No. 1709, see 1964 U.S. Code Cong. and Adm. News, p. 2990.

*174585 1968 Acts. House Report No. 1629, see 1968 U.S. Code Cong. and Adm. News, p. 4252.

  1970 Acts. House Report No. 91-1546, see 1970 U.S. Code Cong. and Adm. News, p. 3982.

  1982 Acts. Senate Report No. 97-275, see 1982 U.S. Code Cong. and Adm. News, p. 11.

  1984 Acts. House Report No. 98-1030 and House Conference Report No. 98-1159, see 1984 U.S. Code Cong. and Adm. News, p. 3182.

  1986 Acts. House Report No. 99-417, see 1986 U.S. Code Cong. and Adm. News, p. 6165.

  1988 Acts. For Related Reports, see 1988 U.S. Code Cong. and Adm. News, p. 5937.

  1996 Acts. Senate Report No. 104-179 and House Conference Report No. 104-518, see 1996 U.S. Code Cong. and Adm. News, p. 924.

  1997 Acts. House Conference Report No. 105-405, see 1997 U.S. Code Cong. and Adm. News, p. 2942.

  1999 Acts. Statement by President, see 1999 U.S. Code Cong. and Adm. News, p. 290.

  2004 Acts. House Conference Report No. 108-792, see 2004 U.S. Code Cong. and Adm. News, p. 2577.

  Statement by President, see 2004 U.S. Code Cong. and Adm. News, p. S46.

References in Text
  The General Schedule, referred to in subsec. (d)(1), is set out under 5 U.S.C.A. § 5332.

  The effective date of the Criminal Justice Act Revision of 1986, referred to in subsec. (d)(1), is, with qualifications, 120 days after the date of enactment of Pub.L. 99-651, which was approved Nov. 14, 1986. See section 105 of Pub.L. 99-651, set out as a note under this section.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

18 USCA Sec. 3006A, Adequate representation of defendants                    **Page 8**

Section 5305 of Title 5, referred to in subsec. (d)(1), was amended generally by Pub.L. 101-509, Title V, § 529 [Title I, § 101(a)(1)], Nov. 5, 1990, 104 Stat. 1427, 1436, and, as so amended, does not relate to adjustments in the rate of pay under the General Schedule. See 5 U.S.C.A. § 5303.

**\*174586** The enactment of this Act, referred to in subsec. (d)(4)(F), means the enactment of Pub.L.105-119, which was approved Nov. 26, 1997.

The provisions of title 5 governing appointments in the competitive service, referred to in subsec. (g)(2)(A), are classified to section 3301 et seq. of Title 5, Government Organization and Employees.

Title 28, United States Code, section 605, referred to in subsec. (g) (2) (A), is section 605 of Title 28, Judiciary and Judicial Procedure.

Chapter 5 of title 28, United States Code, referred to in subsec. (j), is chapter 5 of Title 28, Judiciary and Judicial Procedure.

Codifications
Subsection (d)(4)(F) refers to "The amendment made by paragraph (4)". Section 308 of Pub.L. 105-119 struck out former paragraph (4) of subsection (d) and inserted the new paragraph (4), of which subpar. (F) is part. Section 308 of Pub.L. 105-119 contained no other paragraph designated as paragraph (4).

Amendments
2004 Amendments. Subsec. (d)(2). Pub.L. 108-447, Div. B, § 304(a), struck out "5,200" and inserted "7,000", struck out "1,500" and inserted "2,000", struck out "3,700" and inserted "5,000", struck out "1,200" in two places and inserted "1,500", and struck out "3,900" and inserted "5,000".

Subsec. (e)(2)(A).    Pub.L. 108-447, Div. B, § 304(b)(1)(A), struck out "300" and inserted "500".

Subsec. (e)(2)(B).    Pub.L. 108-447, Div. B, § 304(b)(1)(B), struck out "300" and inserted "500".

Subsec. (e)(3). Pub.L. 108-447, Div. B, § 304(b)(2), struck out "1,000" and inserted "1,600" in the first sentence.

2000 Amendments. Subsec. (d)(1). Pub.L. 106-518, § 211, struck out "Attorneys shall be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the United States magistrate or the court." and inserted "Attorneys may be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the United States magistrate or the court, and the costs of defending actions alleging malpractice of counsel in furnishing representational services under this section. No reimbursement for expenses in defending against malpractice claims shall be made if a judgment of malpractice is rendered against the counsel furnishing representational services under this section. The United

States magistrate or the court shall make determinations relating to reimbursement of expenses under this paragraph."

**\*174587** Subsec. (d)(2). Pub.L. 106-518, § 210, rewrote par. (2), which formerly read:

"**(2) Maximum amounts.**--For representation of a defendant before the United States magistrate or the district court, or both, the compensation to be paid to an attorney or to a bar association or legal aid agency or community defender organization shall not exceed $3,500 for each attorney in a case in which one or more felonies are charged, and $1,000 for each attorney in a case in which only misdemeanors are charged. For representation of a defendant in an appellate court, the compensation to be paid to an attorney or to a bar association or legal aid agency or community defender organization shall not exceed $2,500 for each attorney in each court. For representation of an offender before the United States Parole Commission in a proceeding under section 4106A of this title, the compensation shall not exceed $750 for each attorney in each proceeding; for representation of an offender in an appeal from a determination of such Commission under such section, the compensation shall not exceed $2,500 for each attorney in each court. For any other representation required or authorized by this section, the compensation shall not exceed $750 for each attorney in each proceeding."

1999 Amendments. Subsec. (d)(4)(D)(vi). Pub.L. 106-113, [§ 308(a)] inserted ", except that the amount of the fees shall not be considered a reason justifying any limited disclosure under section 3006A(d)(4) of title 18, United States Code" after the word "require".

1997 Amendments. Subsec. (d)(4). Pub.L. 105-119, § 308, rewrote par (4) which formerly read:

"**(4) Disclosure of fees.**--The amounts paid under this subsection, for representation in any case, shall be made available to the public."

1996 Amendments. Subsec. (d)(4) to (7). Pub.L. 104-132, § 903(a)(1), added par. (4), and redesignated former pars. (4), (5), and (6) as pars. (5), (6), and (7), respectively.

Subsec. (e)(4). Pub.L. 104-132, § 903(a)(2), added par. (4).

1988 Amendments. Subsec. (a)(1)(J). Pub.L. 100-690, § 7101(f)(1), added subpar. (J).

**\*174588** Subsec. (d)(2). Pub.L. 100-690, § 7101(f)(2), added provisions which related to representation of offender before United States Parole Commission, and in appeal from determination of such Commission.

1987 Amendments. Subsec. (a)(1)(E). Pub.L. 100-182, § 19(2), added subpar. (E). Former subpar. (E) was

© 2007 Thomson/West. No claim to original U.S. Govt. works.

18 USCA Sec. 3006A, Adequate representation of defendants

redesignated (F).

Subsec. (a)(1)(F) to (I). Pub.L. 100-182, § 19(1), redesignated subpars. (E) through (H) as (F) through (I), respectively.

1986 Amendments. Subsec. (a). Pub.L. 99-651, § 102(a)(1), in provisions preceding par. (1), added provision requiring that the plan for furnishing representation for any person financially unable to obtain adequate representation be placed in operation in accordance with this section and substituted reference to services necessary for adequate representation for reference to services necessary for an adequate defense.

Subsec. (a)(1). Pub.L. 99-651, § 102(a)(1), designated existing provisions in part as par. (1), in par. (1), as so redesignated, redesignated former cls. (1) to (5) as subpars. (A), (C), (D), (F), (G), (H) and (I), in subpar. (A), as so redesignated, struck out provision relating to persons charged with juvenile delinquency by the commission of an act, which, if committed by an adult, would have been a felony or misdemeanor, in subpar. (G), as so redesignated, struck out provisions referring to persons subject to revocation of parole or seeking collateral relief, and added subpars. (B) and (E). Former par. (1) redesignated as subpar. (A) of par. (3).

Subsec. (a)(2). Pub.L. 99-651, § 102(a)(1), added par. (2). Former par. (2) redesignated as subpar. (B) of par. (3).

Subsec. (a)(3). Pub.L. 99-651, § 102(a)(1), designated existing provisions in part as par. (3), and in par. (3) as so redesignated substituted provision that private attorneys shall be appointed in a substantial proportion of the cases for provision that each plan had to provide for private attorneys, redesignated former pars. (1) and (2) as subpars. (A) and (B), and in subpar. (B) as so redesignated substituted reference to subsec. (g) for former reference to subsec. (h).

*174589 Subsec. (b). Pub.L. 99-651, § 102(a)(2), substituted "In every case in which a person entitled to representation under a plan approved under subsection (a)" for "In every criminal case in which the defendant is charged with a felony or a misdemeanor (other than a petty offense as defined in section 1 of this title) or with juvenile delinquency by the commission of an act which, if committed by an adult, would be such a felony or misdemeanor or with a violation of probation and" and substituted "person" for "defendant" and "persons" for "defendants", respectively, wherever appearing.

Subsec. (d)(1). Pub.L. 99-651, § 102(a)(3)(A), added provisions that the Judicial Conference is authorized to set a higher maximum hourly rate not to exceed $75, for a particular circuit or district within a circuit, if the Conference determines that circumstances existing in such circuit or district warrant an exception from the general maximum, and that the Conference is also authorized to develop guidelines for determining such maximum hourly rates, taking into account such factors as the minimum range of the prevailing rate for qualified attorneys in individual districts, and the recommendation of the judicial councils of the circuits, and further authorized the Conference to annually increase the maximum hourly rates specified in this paragraph up to the aggregate of the overall average percentages of the adjustments in the rates of pay under the General Schedule made pursuant to section 5305 of Title 5 on or after the effective date of Pub.L. 99-651 or since the last raise was made under this paragraph, with such authority to become operative no earlier than three years after the effective date of Pub.L. 99-651. (See Effective and Applicability Provisions for 1986 Acts and References in Text notes set out under this section.)

Subsec. (d)(2). Pub.L. 99-651, § 102(a)(3)(B)(i), substituted "$3,500 for each attorney in a case in which one or more felonies are charged, and $1,000" for "$2,000 for each attorney in a case in which one or more felonies are charged, and $800".

Pub.L. 99-651, § 102(a)(3)(B)(ii), substituted "$2,500 for each attorney in each court" for "$2,000 for each attorney in each court".

Pub.L. 99-651, § 102(a)(3)(B)(iii), substituted provision that for any other representation required or authorized by this section, the compensation shall not exceed $750 for each attorney in each proceeding for provision that for representation in connection with a post-trial motion made after the entry of judgment or in a probation revocation proceeding or for representation provided under subsection (g) the compensation could not exceed $500 for each attorney in each proceeding in each court.

*174590 Subsec. (d)(3). Pub.L. 99-651, § 102(a)(3)(C), added provision that the chief judge of the circuit may delegate such approval authority to an active circuit judge.

Subsec. (d)(4). Pub.L. 99-651, § 102(a)(3)(D), substituted "the attorney provided representation to the person involved" for "the attorney represented the defendant".

Subsec. (e)(1). Pub.L. 99-651, § 102(a)(4)(A), substituted "adequate representation" for "an adequate defense".

Subsec. (e)(2). Pub.L. 99-651, § 102(a)(4)(B), designated existing provisions as subpar. (A), in subpar. (A) as so designated substituted reference to adequate representation for reference to an adequate defense, added exception relating to subpar. (B), and increased the authorized amount for services from $150 to $300, and added subpar. (B).

Subsec. (e)(3). Pub.L. 99-651, § 102(a)(4)(C), substituted "$1,000" for "$300" and added provision that the chief judge of the circuit may delegate such approval authority to an active circuit judge.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Subsec. (g). Pub.L. 99-651, § 102(b)(1), redesignated former subsec. (h) as (g), and struck out former subsec. (g), which provided for discretionary appointments of representatives by the court or magistrate.

Subsec. (g)(2)(A). Pub.L. 99-651, § 102(a)(5)(A)(i), in subsec. (g)(2)(A), as so redesignated, substituted "in accordance with section 605 of title 28" for "similarly as under title 28, United States Code, section 605, and subject to the conditions of that section".

Pub.L. 99-651, § 102(a)(5)(A)(ii), added provision authorizing the continuation in office, upon a majority vote of the judges of the court of appeals, of a Federal Public Defender whose term has expired until appointment of a successor or until one year after the expiration of such Defender's term, whichever is earlier.

Subsec. (g)(2)(B). Pub.L. 99-651, § 102(a)(5)(B), in provisions preceding cl. (i), substituted "for the next fiscal year" for "for the coming year".

**\*174591** Subsec. (g)(3). Pub.L. 99-651, § 102(a)(5)(C), added par. (3).

Subsec. (h). Pub.L. 99-651, § 102(b)(1), redesignated former subsec. (i) as (h). Former subsec. (h) redesignated (g).

Subsec. (i). Pub.L. 99-651, § 102(a)(6), (b)(1), redesignated former subsec. (j) as (i), and in subsec. (i), as so redesignated, added provision for funds for the continuing education and training of persons providing representational services under this section. Former subsec. (i) redesignated (h).

Subsec. (j). Pub.L. 99-651, § 102(b)(1), (2), redesignated former subsec. (k) as (j), and in subsec. (j) as so redesignated included the District Court for the Northern Mariana Islands. Former subsec. (j) redesignated (i).

Subsec. (k). Pub.L. 99-651, § 102(a)(7), (b)(1), redesignated former subsec. (l) as (k), and in subsec. (k) as so redesignated substituted "The provisions of this section shall apply" for "The provisions of this Act, other than subsection (h) of section 1, shall apply" and "The provisions of this section shall not apply" for "The provisions of this Act shall not apply", respectively. Former subsec. (k) redesignated (j).

Subsec. (l). Pub.L. 99-651, § 102(b)(1), redesignated former subsec. (l) as (k).

1984 Amendments. Subsec. (a). Pub.L. 98-473, § 405(a), redesignated former cl. (4) as (5) and added cl. (4).

Subsec. (a)(1)(A). Pub.L. 98-473, § 223(e)(1), as amended by Pub.L. 99-651, § 103, substituted "Class A misdemeanor" for "misdemeanor (other than a petty offense as defined in section 1 of this title)".

Subsec. (a)(1)(E). Pub.L. 98-473, § 223(e)(2), as amended by Pub.L. 99-651, § 103, redesignated former subpar. (F) as (E), and struck out former subpar. (E), which required that representation be provided for any financially eligible person who was entitled to appointment of counsel in parole proceedings under chapter 311 of this title.

**\*174592** Subsec. (a)(1)(F) to (I). Pub.L. 98-473, § 223(e)(2), as amended by Pub.L. 99-651, § 103, redesignated former subpars. (G) to (I) as (F) to (H), respectively. Former subpar. (F) redesignated (E).

Subsec. (a)(2)(A). Pub.L. 98-473, § 223(e)(3), as amended by Pub.L. 99-651, § 103, substituted "Class B or C misdemeanor, or an infraction" for "petty offense".

Subsec. (d)(1). Pub.L. 98-473, § 1901(1), substituted "$60" for "$30" before "per hour for time expended in court".

Pub.L. 98-473, § 1901(2), substituted "$40" for "$20" before "per hour for time reasonably expended out of court".

Pub.L. 98-473, § 1901(3), struck out ", or such other hourly rate, fixed by the Judicial Council of the Circuit, not to exceed the minimum hourly scale established by a bar association for similar services rendered in the district." at the end of the first sentence.

Subsec. (d)(2). Pub.L. 98-473, § 1901(4), substituted "$2,000" for "$1,000" wherever appearing.

Pub.L. 98-473, § 1901(5), substituted "$800" for "$400" before "for each attorney in a case".

Pub.L. 98-473, § 1901(6), substituted "$500" for "$250" before "for each attorney in".

Subsec. (g). Pub.L. 98-473, § 405(b), struck out reference to section 4245 of title 18.

1982 Amendments. Subsec. (h)(2)(A). Pub.L. 97-164, § 206(a), substituted "court of appeals" for "judicial council" wherever appearing and "court of appeals of the circuit" for "Judicial Council of the Circuit".

Subsec. (i). Pub.L. 97-164, § 206(b), substituted "court of appeals" for "judicial council".

1974 Amendments. Subsec. (l). Pub.L. 93-412 substituted "shall apply in the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit. The provisions of this Act shall not apply to the Superior Court of the District of Columbia and the District of Columbia Court of Appeals" for "shall be applicable in the District of Columbia" and struck out provisions that the plan of the District of Columbia shall be approved jointly by the Judicial Council of the District of Columbia Circuit and the District of Columbia Court of Appeals.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

**\*174593** 1970 Amendments. Subsec. (a). Pub.L. 91-447, § 1(a), expanded coverage of district court plan for furnishing representation to financially disabled persons to include defendants charged with violation of probation, any person under arrest when such representation is required by law, any person who is subject to revocation of parole, in custody as a material witness, or seeking collateral relief as provided in subsec. (g) of this section, and any person for whom the Sixth Amendment to the Constitution requires appointment of counsel or for whom, in a case in which he faces loss of liberty, any Federal law requires the appointment of counsel, and required each plan to include a provision for participation by private attorneys in a substantial proportion of cases, as well as permitting attorneys to be furnished by bar, legal aid, or defender organizations in accordance with subsec. (h) of this section.

Subsec. (b). Pub.L. 91-447, § 1(a), provided for appointment of counsel from a bar association, legal aid agency, or defender organization as well as from a panel of attorneys approved by the court, expanded advice to defendant of right to appointment of counsel where defendant is charged with juvenile delinquency by the commission of an act which, if committed by an adult, would be a felony or misdemeanor or with violation of probation, and provided for appointment of counsel to be retroactive so as to include any representation furnished pursuant to the plan prior to appointment.

Subsec. (c). Pub.L. 91-447, § 1(a), expanded the scope of representation by appointed counsel to include ancillary matters appropriate to the proceedings.

Subsec. (d). Pub.L. 91-447, § 1(a), raised the rate of compensation not to exceed $30 from $15 per hour for time expended in court and $20 from $10 per hour for time reasonably expended out of court, increased the limit in proceedings before a United States magistrate, district court, or appellate court to $1,000 from $500 for each attorney in a case involving one or more alleged felonies and $400 from $300 for each attorney in a case in which one or more misdemeanors are charged, and provided a $250 maximum for each attorney for representation in connection with a post-trial motion, probation revocation proceedings and matters covered by subsec. (g) such as parole revocation and collateral relief proceedings, provided for waiver of maximum amounts and payment in excess of those amounts for extended or complex representation upon approval of the chief judge of the circuit, provided for separate claims of compensation to be submitted to the appropriate court, with a U.S. magistrate fixing compensation in cases before him, appellate court fixing compensation in cases before it and in all other instances claims being made to the district court, provided a court order granting a new trial is deemed to initiate a new case for the purposes of compensation, and facilitated appellate proceedings by allowing a defendant for whom counsel is appointed to appeal or petition for a writ of certiorari without prepayment of fees and cost of security therefore and without filing the affidavit required by section 1915(a) of Title 28.

Subsec. (e). Pub.L. 91-447, § 1(a), limited to $150, plus reasonable expenses, subject to later review and approval by the court, the cost of investigative, expert, or other services necessary for an adequate defense where these services are obtained without prior authorization because circumstances prevented counsel from securing prior court authorization, maintained existing limit on payment for authorized services at a $300 maximum but permitted waiver of that maximum if the court certifies that payment in excess of that limit is necessary to provide fair compensation, and provided that the amount of any excess payment must be approved by the chief judge of the circuit.

**\*174594** Subsec. (f). Pub.L. 91-447, § 1(a), substantially re-enacted subsec. (f).

Subsec. (g). Pub.L. 91-447, § 1(b), added subsec. (g). Former subsec. (g) was redesignated as subsec. (i).

Subsec. (h). Pub.L. 91-447, § 1(b), added subsec. (h). Former subsec. (h) was redesignated as subsec. (j).

Subsec. (i). Pub.L. 91-447, § 1(b), redesignated former subsec. (g) as subsec. (i).

Subsec. (j). Pub.L. 91-447, § 1(b), redesignated former subsec. (h) as subsec. (j).

Subsec. (k). Pub.L. 91-447, § 1(b), redesignated former subsec. (i) as subsec. (k).

Subsec. (l). Pub.L. 91-447, § 1(c), added subsec. (l).

1968 Amendments. Subsecs. (b) to (d). Pub.L. 90-578 substituted "United States magistrate" for "United States commissioner" wherever appearing.

Effective and Applicability Provisions
1999 Acts. Pub.L. 106-113, § 1000(a)(1) [Title III, § 308(b)], Nov. 29, 1999, 113 Stat. 1535, 1501A-37 provided that: "This section [amending subsec. (d)(4)(D) of this section] shall apply to all disclosures made under section 3006A(d) of title 18, United States Code, related to any criminal trial or appeal involving a sentence of death where the underlying alleged criminal conduct took place on or after April 19, 1995."

1996 Acts. Section 903(c) of Pub.L. 104-132 provided that: "The amendments made by this section [amending this section and section 848 of Title 21, Food and Drugs] apply to--

"**(1)** cases commenced on or after the date of the enactment of this Act [Apr. 24, 1996]; and

"**(2)** appellate proceedings, in which an appeal is perfected, on or after the date of the enactment of this Act [Apr. 24, 1996]."

1987 Acts. Section 26 of Pub.L. 100-182 provided that:

© 2007 Thomson/West. No claim to original U.S. Govt. works.

18 USCA Sec. 3006A, Adequate representation of defendants

"The amendments made by this Act [amending this section
and sections 3551 note, 3553, 3561, 3563, 3564, 3583,
3663, 3672, 3742, and 4106 of this title, section 994 of
Title 28, Judiciary and Judicial Procedure, and sections 504
and 1111 of Title 29, Labor, and enacting provisions set out
as notes under sections 3551 and 3553 of this title, section
994 of Title 28, and rule 35, Federal Rules of Criminal
Procedure] shall apply with respect to offenses committed
after enactment of this Act [Dec. 7, 1987]."

© 2007 Thomson/West. No claim to original U.S. Govt. works.

LexisNexis® *Total Research System*

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts

Switch Client | Preferences | Sign Off | ? Help

History 🖨

Source: Legal > / . . . / > **Federal & State Cases, Combined** ⒤
Terms: **name(buckley and terhune)** (Edit Search | Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery
☐

*441 F.3d 688, *; 2006 U.S. App. LEXIS 6612, ***

BRIAN A. **BUCKLEY,** Petitioner-Appellee, v. C.A. **TERHUNE,** Director of the California Department of Corrections, Respondent-Appellant.

No. 03-55045

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

441 F.3d 688; 2006 U.S. App. LEXIS 6612

September 27, 2005, Argued and Submitted, San Francisco, California
March 17, 2006, Filed

**SUBSEQUENT HISTORY:** US Supreme Court certiorari denied by, Motion denied by Tilton v. Buckley, 2007 U.S. LEXIS 4501 (U.S., Apr. 23, 2007)

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the Central District of California. D.C. No. CV-00-02435-JSL. J. Spencer Letts, District Judge, Presiding.
Buckley v. Terhune, 266 F. Supp. 2d 1124, 2002 U.S. Dist. LEXIS 27532 (C.D. Cal., 2002)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** The state appealed the order of the United States District Court for the Central District of California granting petitioner inmate's petition for a writ of habeas corpus and directing that he be released from prison because he had already served the full 15 years for which he bargained under a plea agreement.

**OVERVIEW:** The district court ruled that the state court's finding that the inmate well knew that his sentence for second degree murder was 15 years to life was both contrary to clearly established federal law in violation of 28 U.S.C.S. § 2254(d)(1) and an unreasonable determination of the facts in violation of § 2254(d)(2). Under § 2254(d)(1), the state court's failure to interpret the inmate's plea agreement according to California contract law resulted in a decision that was contrary to clearly established Supreme Court law as set forth in Santobello v. New York and Ricketts v. Adamson. Under Santobello, the inmate had a due process right to enforce the provisions of his plea agreement. Under Adamson, the state court was required to interpret the inmate's plea agreement pursuant to California contract law. The consequence was that the inmate was sentenced to an indeterminate prison term of 15 years to life when the bargained-for sentence, to which he was constitutionally entitled, was a maximum of 15 years. Thus, the state court committed constitutional error that had a substantial and injurious effect on the inmate and the inmate was entitled to habeas corpus relief.

**OUTCOME:** The judgment of the district court granting the inmate's petition for a writ of habeas corpus was affirmed.

**CORE TERMS:** plea agreements, sentence, years to life, murder, ambiguity, prison, sentencing, contract law, degree murder, ambiguous, maximum, parole, initialed, federal law, habeas petition, prosecutor, felony, prison term, habeas corpus, surrounding circumstances, sentenced, state law, prison sentence, factual determination, specific performance, subjective, promisee,

bargain, declare, maximum possible

**LEXISNEXIS® HEADNOTES**                                                               ⊟ **Hide**

Contracts Law > Contract Interpretation > General Overview 🔲

Criminal Law & Procedure > Guilty Pleas > Enforcement of Plea Agreements 🔲

*HN1*⚓The law regarding plea agreements entered into in state court is well-established. They must be construed in accordance with state law. In California, plea agreements are construed in the same manner as all other contracts. More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Habeas Corpus > Appeals > Standards of Review > Clear Error Review 🔲

Criminal Law & Procedure > Habeas Corpus > Appeals > Standards of Review > De Novo Review 🔲

*HN2*⚓The district court's decision to grant a 28 U.S.C.S. § 2254 habeas petition is reviewed de novo. An appellate court may affirm on any ground supported by the record, even if it differs from the rationale used by the district court. The appellate court reviews findings of fact made by the district court for clear error. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Threshold Requirements 🔲

Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Contrary & Unreasonable Standard > Clearly Established Federal Law 🔲

Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Contrary & Unreasonable Standard > Unreasonable Application 🔲

*HN3*⚓Under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C.S. § 2254 habeas petitions shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C.S. § 2254 (d). More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Guilty Pleas > Enforcement of Plea Agreements 🔲

*HN4*⚓Under Santobello v. New York, a criminal defendant has a due process right to enforce the terms of his plea agreement. More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Guilty Pleas > Enforcement of Plea Agreements 🔲

Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Contrary & Unreasonable Standard > Clearly Established Federal Law 🔲

*HN5*⚓In March 1999, it had been clearly established federal law for more than a decade that the construction and interpretation of state court plea agreements and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Contract Interpretation > General Overview 🔲

Criminal Law & Procedure > Guilty Pleas > Enforcement of Plea Agreements 🔲

*HN6*⚓In California, a negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles, and according to the same rules as other contracts. Thus, under Adamson, California courts are required to construe and interpret plea agreements in accordance with state contract law. More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Threshold Requirements 🔲

Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Contrary & Unreasonable Standard > Unreasonable Application 🔲

*HN7*⚓The "unreasonable application" provision of 28 U.S.C.S. § 2254(d)(1) applies where the state court identifies the correct governing legal principle from the United States

Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Threshold Requirements 🗒
Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Contrary & Unreasonable Standard >
Contrary to Clearly Established Federal Law 🗒
**HN8**⚓ A state court decision is contrary to United States Supreme Court's clearly established precedent if the state court applies a rule that contradicts the governing law set forth in its cases. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview 🗒
**HN9**⚓ In California, all contracts, whether public or private, are to be interpreted by the same rules. Cal. Civ. Code § 1635. A court must first look to the plain meaning of the agreement's language. Cal. Civ. Code §§ 1638, 1644. If the language in the contract is ambiguous, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it. Cal. Civ. Code § 1649. The inquiry considers not the subjective belief of the promisor but, rather, the objectively reasonable expectation of the promisee. Courts look to the objective manifestations of the parties' intent. If after this second inquiry the ambiguity remains, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. Cal. Civ. Code § 1654. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Contract Interpretation > Parol Evidence > General Overview 🗒
**HN10**⚓ The California Civil Code provision permitting the showing of surrounding circumstances is not applicable to every contract which comes before a court for interpretation. It is applicable only where the language used in the contract is doubtful, uncertain or ambiguous. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > General Overview 🗒
Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > Contrary & Unreasonable Standard >
Unreasonable Application 🗒
**HN11**⚓ Under the Antiterrorism and Effective Death Penalty Act, even where the state court has committed constitutional error under 28 U.S.C.S. § 2254(d), habeas relief may still be denied absent a showing of prejudice. More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues > Threshold Requirements 🗒
Criminal Law & Procedure > Habeas Corpus > Review > Standards of Review > General Overview 🗒
**HN12**⚓ Where the state court fails to apply United States Supreme Court law, a reviewing court must conduct a de novo review of that question. More Like This Headnote

Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview 🗒
**HN13**⚓ After finding an ambiguity in the language of a contract, an appellate court must next attempt to resolve that uncertainty by looking to the objectively reasonable expectations of the promisee. Cal. Civ. Code § 1649. This inquiry considers the disputed or ambiguous language in the context of the contract as a whole and of the relevant surrounding circumstances. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Contract Interpretation > Ambiguities & Contra Proferentem > General Overview 🗒
**HN14**⚓ See Cal. Civ. Code § 1654.

Criminal Law & Procedure > Guilty Pleas > Breach of Plea Agreements 🗒
**HN15**⚓ Where a plea agreement is breached, the purpose of the remedy is, to the extent possible, to repair the harm caused by the breach. More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Guilty Pleas > Breach of Plea Agreements 🗒
In a case in which the state has already received the benefit of the bargain, the harm

HN16⊥caused by its breach is generally best repaired by specific performance of the plea agreement, although a defendant may, if he so chooses, elect instead to rescind the agreement and take his chances from there. More Like This Headnote | Shepardize: Restrict By Headnote

**COUNSEL:** Allen Bloom, San Diego, California, for the petitioner-appellee.

Bill Lockyer, Attorney General; Robert R. Anderson, Chief Assistant Attorney General; Pamela C. Hamanaka, Senior Assistant Attorney General; Kenneth C. Byrne, Supervising Deputy Attorney General; Noah P. Hill, Deputy Attorney General; Los Angeles, California, for the respondent-appellant.

**JUDGES:** Before: Mary M. Schroeder, Chief Judge, Stephen Reinhardt, Alex Kozinski, M. Margaret McKeown, Kim McLane Wardlaw, Raymond C. Fisher, Richard A. Paez, Marsha S. Berzon, Richard C. Tallman, Jay S. Bybee, and Consuelo M. Callahan, Circuit Judges. Opinion by Judge Reinhardt; Dissent by Judge Callahan.

**OPINION BY:** Stephen Reinhardt

**OPINION**

**[\*690]** REINHARDT, Circuit Judge:

HN1⊼The law regarding plea agreements entered into in state court is well-established. They must be construed in accordance with state law. In California, plea agreements are construed in the same manner as all other contracts. In this case, however, the California courts failed to do so and, as a result, Brian Buckley might **[\*\*2]** have remained in prison for life instead of for the fifteen years for which he bargained. We are required to ensure that his constitutional rights are not so violated, and that the bargain he entered into with the state is honored.

**[\*691]** The state appeals the district court's order granting Buckley's petition for a writ of habeas corpus and directing that he be released from prison because he had already served the full fifteen years. The district court ruled that the state court's finding that Buckley "well knew" that his sentence for second degree murder was fifteen years to life was both contrary to clearly established federal law in violation of 28 U.S.C. § 2254(d)(1) and an unreasonable determination of the facts in violation of § 2254(d)(2). In accordance with the district court's order, Buckley has now been released. We affirm the judgment of the district court because, under § 2254(d)(1), the state court's failure to interpret Buckley's plea agreement according to California contract law resulted in a decision that was contrary to clearly established Supreme Court law as set forth in _Santobello v. New York_, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), **[\*\*3]** and _Ricketts v. Adamson_, 483 U.S. 1, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987).

FACTUAL AND PROCEDURAL BACKGROUND

On November 12, 1987, Buckley was charged with burglary, robbery and first degree murder in Ventura County Superior Court. The charges arose from allegations that Buckley and two others, Curtis Fauber and Christopher Caldwell, robbed and killed Thomas Urell in his home in July 1986.

On December 15, 1987, Donald Glynn, the deputy district attorney assigned to Buckley's case, sent Buckley's attorney a letter offering a plea bargain. The letter stated that, in exchange for Buckley's sworn testimony describing Fauber and Caldwell's participation in the Urell murder and in two additional unrelated murders, Glynn would dismiss the robbery and burglary charges against Buckley and move the court to declare the murder charge against him to be murder in the second degree. The letter was silent as to the sentence Buckley would receive. Glynn attached to the letter a type-written felony disposition statement. That document contained the following relevant language:

CONSEQUENCES OF PLEA (Defendant to initial)

My attorney has explained to me the direct and indirect consequences [**4] of this plea including the maximum possible sentence. I understand that the following consequences could result from my plea:

I could be sentenced to the state prison for *a maximum possible term of 15 year(s)*.

***

After I have served my prison term, I may be subject to a maximum parole period of LIFE (*In re Carabes*, 144 Cal. App. 3d 927, 193 Cal. Rptr. 65). [1]

(Emphasis added). On December 17, 1987, Buckley initialed the paragraphs describing his agreed-upon sentence and signed the statement.

**FOOTNOTES**

[1] The number "15" was handwritten. The word "LIFE" was not added until the January 4, 1988, plea hearing. However, the question of Buckley's parole term is not at issue here.

The district court found that at the time Buckley initialed and signed the felony disposition statement, a separate section of that document entitled "The District Attorney's Position on Sentence" was blank. At some point after December 17, 1987, but before the change of plea hearing on January 4, 1988, Glynn [**5] added a handwritten paragraph to that section: "At the time of sentencing the people will move the court to declare the murder to be murder in the second degree, *with a maximum* [*692] *term of 15 years to life*." (Emphasis added). Buckley did not initial the paragraph, and there is no evidence that he saw it before sentencing.

At the change of plea hearing, Glynn and Buckley engaged in the following colloquy:

Q: And has your attorney explained all of the con-sequences of your plea to this charge?

A: Yes.

Q: Do you understand that for second degree murder you could be sentenced to state prison for *a maximum possible term of fifteen years?*

A: Yes.

Q: And do you understand that after serving a prison term you'll be subject to a parole period -- I'm sorry, your Honor, does the Court know the parole period for second degree murder? I didn't enter that in the document.

The Court: Yes, it's -- the possibility is parole for life.

Q: All right. I've entered this into the document. You could be subject to a parole period of life. And you could also be ordered to pay a fine of not less than a hundred dollars nor more than $ 10,000. Do you understand that? [**6]

A: Yes.

***

Q: Now as I stated before and it's also contained in this Felony Disposition form, that at the time of sentencing the people will ask the Court to declare the murder to be murder in the second degree *with a maximum term of fifteen years to life*. And the People's

reason for entering into that agreement are [sic] contained in this document that's attached to the Felony Disposition Statement.

I'd like to go into the terms of this agreement with you. In order -- or as your part of the agreement you will agree to cooperate in the trials against Curtis Fauber and Christopher Cogwell [sic], and that you will testify in the Fauber case at all proceedings regarding the murder of Thomas Urell, David Church and Jack Dowdy, and testify truthfully regarding whatever you know about those murders. Do you understand that to be the situation?

A: Yes.

***

Q: I'm showing you the Felony Disposition form, this yellow form here, that has some initials B.B. against a number of the paragraphs. Also has the initials D.C.G. which are my initials against some of the paragraphs. And at the end of the form I see the date December 17, 1987 and your signature. **[**7]** Did you sign this document on that date?

A: Yes.

Q: And did you sign this document because *you read each of the paragraphs that you have initialed and you understand what's contained in these paragraphs*

A: Yes.

(Emphasis added). The December 15 letter and the felony disposition statement were entered into evidence as constituting the plea agreement, and the court accepted and entered Buckley's guilty plea.

On January 7, 1988, Buckley testified on behalf of the prosecution at the guilt phase of Fauber's trial. On cross-examination, Buckley stated that he had been given a sentence of "fifteen years to life" in exchange for his testimony. On January 22, 1988, Buckley testified for the prosecution at a preliminary hearing in Caldwell's case. There, he acknowledged that his charged offense had been reduced to second degree murder, although there was no discussion of his sentence. On February 9, 1988, **[*693]** Buckley testified at the penalty phase of Fauber's trial. On cross-examination, when asked by defense counsel when he "expected to be released from prison" as a result of his testimony, Buckley responded, "seven and a half years." [2]

## FOOTNOTES

[2] Buckley's statement that he expected to be released from prison in seven and a half years apparently reflected his erroneous belief that under California law he would be released after he had served half of his sentence if he exhibited good behavior. *See* CAL. PENAL CODE § 3049.

**[**8]** Buckley's sentencing hearing took place on March 1, 1988, after his testimony in the Fauber and Caldwell cases. At the hearing, Glynn informed the court that Buckley had "complied with the terms of the negotiated disposition." The prosecutor moved the court to declare the murder charge against Buckley to be murder in the second degree, and to dismiss the remaining two counts. The court granted the motion, ordered Buckley to pay $ 10,000 in restitution, and sentenced him to a prison term of fifteen years to life and a parole term of life. Buckley's counsel did not object to the sentence. [3]

## FOOTNOTES

[3] Despite the sentence of fifteen years to life in prison, Buckley contends that he believed that

the maximum prison sentence he faced was fifteen years. According to Buckley, this belief resulted from the explicit terms of the plea agreement he saw and initialed, the colloquy at the change of plea hearing (in which he answered "yes" to the prosecutor's question whether he signed the plea agreement because he read and understood *each of the paragraphs that he initialed*), and his understanding that "fifteen to life" was simply another way of saying "fifteen years in prison followed by a parole term of life." There is no evidence that Buckley's trial counsel explained to him the difference between the two sentences. According to Buckley, he did not discover that his sentence was actually an indeterminate term of fifteen years to life until a 1995 administrative hearing in prison.

**[\*\*9]** On May 13, 1996, approximately eight years after Buckley's sentencing, he filed a petition for a writ of habeas corpus in the Ventura County Superior Court. On September 10, 1996, the court, in a two-page order, denied Buckley's petition:

> The court finds that with the exception of one statement in the negotiated disposition statement . . . and a reference at the time of the taking of the plea on January 4, 1988, . . . the records demonstrate that the *advisement* was that the sentence would be 15 years to life as provided by law, and that the petitioner well knew this . . . . During the taking of the plea on January 4, 1988, [] petitioner was expressly *advised* that the maximum term of imprisonment was 15 years to life . . . . Any ambiguity concerning petitioner's understanding of the sentence he was to receive is put to rest by petitioner's own statement found in the transcript of January 7, 1988, during petitioner's testimony at the trial of Curtis Fauber that he understood his term of imprisonment would be 15 years to life . . . .

> \*\*\*

> Based upon the record provided by counsel in the within matter, it is evident that petitioner well knew that the term of imprisonment **[\*\*10]** for which he was to be committed to prison for the crime of second degree murder was 15 years to life. *In re Mosher* [sic], (1993) 6 Cal. 4th 342, 354-355, 24 Cal. Rptr. 2d 723, 862 P.2d 723, citing *United States vs. Timmreck* (1979) 441 U.S. 780, 784, 99 S. Ct. 2085, 60 L. Ed. 2d 634.

(Emphasis added). Buckley next filed a habeas petition in the California Court of Appeal, which issued a one-sentence summary denial. The California Supreme Court also issued a one-sentence summary denial of a separate successive petition on March 31, 1999.

**[\*694]** Buckley filed a petition for a writ of habeas corpus in district court on March 7, 2000. [4] The court referred the case to a magistrate judge, who ordered an evidentiary hearing. The magistrate judge issued a report that recommended granting the writ. He found that, under 28 U.S.C. § 2254 (d)(2), Buckley had demonstrated by clear and convincing evidence that the state court's factual finding regarding Buckley's subjective understanding of his sentence was "incorrect and unreasonable." *Buckley v. Terhune*, 266 F. Supp. 2d 1124, 1141 (C.D. Cal. 2002). Based on this finding, the magistrate judge concluded that, under § **[\*\*11]** 2254(d)(1), the trial court had failed to "fulfill petitioner's reasonable understanding of the plea agreement," which was contrary to clearly established federal law holding that the state must fulfill a promise that induces a guilty plea. *Id.* at 1142-43. The magistrate judge recommended specific performance of the plea agreement: a determinate sentence of fifteen years in prison. *Id.* at 1143. The district court adopted the magistrate judge's report and recommendation, *id.* at 1126, and the state appealed.

## FOOTNOTES

[4] The one-year statute of limitations applicable to Buckley's federal habeas petition was tolled from the time that he filed his initial state habeas petition to thirty days after the California Supreme Court denied his last petition. *Carey v. Saffold*, 536 U.S. 214, 221-23, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002); *Nino v. Galaza*, 183 F.3d 1003, 1006-07 (9th Cir. 1999). Thus, his federal petition was timely, and the state does not contend otherwise.

[**12]  We affirm, although our analysis differs from the district court's in some respects.

STANDARD OF REVIEW

*HN2* The district court's decision to grant a 28 U.S.C. § 2254 habeas petition is reviewed *de novo*. *See Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004) (per curiam). We may affirm on any ground supported by the record, even if it differs from the rationale used by the district court. *See Ramirez v. Castro*, 365 F.3d 755, 762 (9th Cir. 2004). We review findings of fact made by the district court for clear error. *See Riley v. Payne*, 352 F.3d 1313, 1317 (9th Cir. 2003).

*HN3* Under the Antiterrorism and Effective Death Penalty Act (AEDPA), § 2254 habeas petitions "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented [**13] in the State court proceeding." 28 U.S.C. § 2254(d); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-73, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). Because Buckley filed his federal habeas petition after AEDPA's effective date, we review his petition under the AEDPA standard. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).

ANALYSIS

*HN4* Under *Santobello v. New York*, 404 U.S. 257, 261-62, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), a criminal defendant has a due process right to enforce the terms of his plea agreement. *See also Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) ("[The defendant's] due process rights conferred by the federal constitution allow [him] to enforce the terms of the plea agreement."). *HN5* In March 1999, when the California Supreme Court summarily denied Buckley's petition for a writ of habeas corpus, it had been clearly established federal law for more than a decade [*695] that the construction and interpretation of state court plea agreements "and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3, 107 S. Ct. 2680, 97 L. Ed. 2d 1 (1987). [**14] *HN6* In California, "[a] negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles," *People v. Shelton*, 37 Cal. 4th 759, 767, 37 Cal. Rptr. 3d 354, 125 P.3d 290 (2006), and "according to the same rules as other contracts," *People v. Toscano*, 124 Cal. App. 4th 340, 344, 20 Cal. Rptr. 3d 923 (2004) (cited with approval in *Shelton* along with other California cases to same effect dating back to 1982). Thus, under *Adamson*, California courts are required to construe and interpret plea agreements in accordance with state contract law.

The analysis regarding the breach of Buckley's plea agreement and the remedy to which he is entitled is not new to this court. We previously applied similar principles and rules of construction in *Brown*. In that case, on the basis of *Santobello* and *Adamson*, we held that the state court, in failing to properly apply California contract law when interpreting a plea agreement, had engaged in an objectively unreasonable application of clearly established federal law under § 2254(d)(1). *Brown*, 337 F.3d at 1160 n.2. Here the California Superior Court not only failed to apply state contract law properly [**15] but failed to apply it at all. Its decision, therefore, is unquestionably contrary to clearly established federal law. [5]

## FOOTNOTES

[5] *HN7* The "unreasonable application" provision of § 2254(d)(1) applies where "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). In this case, however, the state court's decision was "contrary to" clearly established law because it failed to apply contract law analysis at all: *HN8* "[A] state court decision is contrary to our clearly established precedent if

the state court applies a rule that contradicts the governing law set forth in our cases . . . ." *Andrade*, 538 U.S. at 73 (internal quotation marks omitted). Whether we classify this case as an "unreasonable application of" or a "contrary to" case is irrelevant, however; the result would be the same in either instance.

**[\*\*16]** I

*HN9* In California, "all contracts, whether public or private, are to be interpreted by the same rules . . . ." CAL. CIV. CODE § 1635; *see also Shelton*, 37 Cal. 4th at 766-67; *Toscano*, 124 Cal. App. 4th at 344. A court must first look to the plain meaning of the agreement's language. CAL. CIV. CODE §§ 1638, 1644. If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." CAL. CIV. CODE § 1649. The inquiry considers not the subjective belief of the promisor but, rather, the "objectively reasonable" expectation of the promisee. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (1992); *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 802 n.9, 79 Cal. Rptr. 2d 273 (1998) ("Although the intent of the parties determines the meaning of the contract, the relevant intent is objective -- that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." (internal quotation marks and citation omitted)). Courts look to the **[\*\*17]** "objective manifestations of the parties' intent . . . ." *Shelton*, 37 Cal. 4th at 767. If after this second inquiry the ambiguity remains, "the language of a contract should be interpreted most strongly against the party **[\*696]** who caused the uncertainty to exist." CAL. CIV. CODE § 1654; *see also Toscano*, 124 Cal. App. 4th at 345 ("ambiguities [in a plea agreement] are construed in favor of the defendant").

Our first inquiry here is whether the Ventura County Superior Court, in the last reasoned state court decision to address Buckley's plea agreement, treated the plea agreement as a contract and applied the three-step approach to interpreting contracts required by California law. Initially, we note that there is no mention of or reference to state contract law in the Superior Court's order denying Buckley's habeas petition. Nor is there any discussion of the terms of the plea agreement. Instead, the order addresses whether Buckley was "expressly advised" by the trial court that his sentence was fifteen years to life, and it cites only cases that consider an "advisement" issue -- that is, the issue of a trial court's duty to explain **[\*\*18]** the charge and the sentence to a defendant. On the basis of this analysis it concluded that Buckley knew what his sentence would be. [6] It is evident on the face of its decision that the Superior Court failed to recognize that Buckley's plea agreement constituted a contract that under California law must be construed like all other contracts. As a result, the Superior Court failed to construe the terms of the plea agreement entirely. Accordingly, it failed to apply controlling state law and reached a decision that both in its mode of analysis and its result was contrary to clearly established Supreme Court law.

**FOOTNOTES**

[6] The Superior Court's order principally cites *In re Moser*, 6 Cal. 4th 342, 354-55, 24 Cal. Rptr. 2d 723, 862 P.2d 723 (1993) (although it misspells the case name). *Moser* was a state habeas case in which the defendant pled guilty "after receiving inadequate or erroneous advice from the trial court" with respect to the possible consequences of his plea agreement. *Id.* at 345. As the *Moser* court held, the issue in that case was "misadvisement," not the breach of a plea agreement. *Id.* at 356. Similarly, *United States v. Timmreck*, 441 U.S. 780, 99 S. Ct. 2085, 60 L. Ed. 2d 634 (1979), which the Superior Court notes was cited in *Moser*, involves the trial court's failure to properly advise the defendant regarding his sentence as required by Federal Rule of Criminal Procedure 11. Again in *Timmreck*, as in *Moser*, the issue was not the breach of a plea agreement but a breach of the trial court's duty to inform the defendant of certain information.

**[\*\*19]** Considering extrinsic evidence before examining the language of the plea agreement and finding it ambiguous, as the state court did in this case, is further evidence of its failure to apply California contract law. CAL. CIV. CODE § 1638; *Pope v. Allen*, 225 Cal. App. 2d 358, 364, 37 Cal. Rptr. 371 (1964) *HN10* ("The code provision permitting the showing of surrounding circumstances is

not applicable to every contract which comes before a court for interpretation. It is applicable only where the language used in the contract is doubtful, uncertain or ambiguous . . . ."). Moreover, even if the Ventura County Superior Court had first considered the plea agreement's language and concluded that it was ambiguous, the court was not then permitted to use parol evidence to gauge the *subjective* understanding of one of the contracting parties. [7] *See* *Bank of the West* **[\*697]** , 2 Cal. 4th at 1264, 1265; *Beck v. Am. Health Group Int'l, Inc.*, 211 Cal. App. 3d 1555, 1562, 260 Cal. Rptr. 237 (1989) ("The objective intent . . . not the parties' subjective intent, governs our interpretation."). In failing first to consider the language of **[\*\*20]** Buckley's plea agreement and second to engage in an analysis of the parties' objective intent in entering that agreement, the Superior Court plainly contravened California law. In light of *Santobello* and *Adamson*, its decision falls squarely within the ambit of § 2254(d)(1).

### FOOTNOTES

[7] The dissent, on the one hand, argues that the state court's finding that Buckley "well knew" that his sentence was fifteen years to life is entitled to our deference under AEDPA. On the other hand, it concedes that the state court failed both to examine the language of the plea agreement and to apply an objective test to determine the mutual intent of the parties. Dissent at 2833 n.1 ("It is true that the California Superior Court did not specify that the plea agreement should be interpreted pursuant to general contract terms. Nonetheless, the application of those terms would not have changed that court's factual determination."). As to our dissenting colleagues' first point, whether or not the state court's determination of Buckley's subjective state of mind was reasonable is wholly irrelevant. The fact remains that the court failed to apply California contract law or to analyze Buckley's plea agreement in that light, or indeed in any light. Although AEDPA does require deference to a state court's factual findings, it does not permit us, as the dissent suggests, to invent factual findings and then ascribe them to the state court. Nor does it allow us to attribute a theory of law to the state court that it failed to employ.

### **[\*\*21]** II

*HN11* Under AEDPA, even where the state court has committed constitutional error under § 2254 (d), "habeas relief may still be denied absent a showing of prejudice." *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). The relevant inquiry in this case is whether the state court's error, which resulted in its finding that the plea agreement mandated an indeterminate prison sentence of fifteen years to life, had a "substantial and injurious effect" on Buckley. *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). To answer this question we must determine what Buckley's sentence would have been had the California courts applied California contract law. *HN12* Where the state court fails to apply Supreme Court law (by failing to apply California contract law) we must ourselves conduct a *de novo* review of that question.

With respect to the first step in California contract analysis, it is clear that the language of Buckley's plea agreement was ambiguous. Critically, the plea agreement contained conflicting paragraphs describing the sentence to be given Buck-ley upon his plea of guilty to second degree murder. One paragraph, which Buckley initialed, **[\*\*22]** stated, "I could be sentenced to the state prison for a maximum possible term of 15 year(s) . . . . After I have served my prison term, I may be subject to a maximum parole period of LIFE." A different paragraph was added later, after Buckley had already read and initiated the agreement. That paragraph, initialed only by Glynn, stated, "At the time of sentencing the people will move the court to declare the murder to be murder in the second degree, with a maximum term of 15 years to life." [8] Even disregarding the timing of the addition of the added paragraph, there is only one reasonable conclusion one can draw from the facts: The language of the plea agreement is ambiguous with respect to Buckley's sentence.

### FOOTNOTES

[8] The district court found that the additional paragraph, which was handwritten, was not added until after Buckley saw and initialed the first paragraph. There appears to be no doubt from the record that the district court is correct in this respect. However, the chronology is not important

to our outcome here: For purposes of this opinion we attach no weight to the fact that the state's version of the bargained-for sentence was incorporated in the plea agreement after Buckley had reviewed and initialed it, and afford that version equal significance to the paragraph on which Buckley relies, although we note that were we to disregard the subsequently incorporated material, there would be no inconsistency and no ambiguity at all, as Buckley's version of the sentence would be the only one set forth in the plea agreement.

**[**23]** *HN13*⚓ **[*698]** After finding an ambiguity in the language of a contract, we must next attempt to resolve that uncertainty by looking to the "objectively reasonable expectations" of the promisee. See *Bank of the West*, 2 Cal. 4th at 1265; CAL. CIV. CODE § 1649. This inquiry considers the disputed or ambiguous language in the context of the contract as a whole and of the relevant surrounding circumstances. *Nissel v. Certain Underwriters at Lloyds of London*, 62 Cal. App. 4th 1103, 1111-12, 73 Cal. Rptr. 2d 174 (1998); *see also Bank of the West*, 2 Cal. 4th at 1265 ("This is because language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." (emphasis and internal quotation marks omitted)).

Applying the second step of California contract analysis in this case does not resolve the ambiguity created by the language of the plea agreement. Read in the context of the entire agreement, the conflicting pronouncements regarding the length of the sentence to be imposed offer no more clarity than they do when read in the abstract. Furthermore, **[**24]** the plea colloquy compounds, rather than cures, this ambiguity. At the January 4, 1988, change of plea hearing, Glynn asked Buckley whether he understood his sentence to be "a maximum possible term of fifteen years," to which Buckley responded, "Yes." However, shortly thereafter, Glynn stated, "Now as I stated before and it's also contained in this Felony Disposition form, that at the time of sentencing the people will ask the Court to declare the murder to be murder in the second degree with a maximum term of fifteen years to life . . . . Do you understand that to be the situation?" Again, Buckley answered, "Yes." Accordingly, the colloquy does no more than replicate the ambiguity and, in turn, lead us to the final step in our contractual analysis. 9

**FOOTNOTES**

9 That Buckley subsequently testified at his co-defendant's trial and sentencing both that he had received a sentence of fifteen years to life and that he expected to be released from prison in seven and one half years only compounds the ambiguity further. Finally, given Buckley's later expressed misunderstanding of the relationship between his prison sentence and his parole term, and the absence of any evidence that counsel explained to him the nature of his sentence, his failure to object to the sentence when it was ultimately imposed by no means serves to eliminate the ambiguity.

**[**25]** The proper interpretation of the plea agreement becomes clear when we turn, as California law provides, to *HN14*⚓§ 1654 of the California Civil Code: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." There is no dispute that both the December 15, 1987, letter from Glynn to Buckley's counsel and the felony disposition statement, which together constituted the plea agreement, were drafted by the prosecutor's office. Thus, we are compelled by § 1654 to construe the ambiguity in the plea agreement -- whether Buckley was to receive a determinate fifteen-year sentence or an indeterminate sentence of fifteen years to life -- against the state. See *Toscano*, 124 Cal. App. 4th at 345. Given the direct conflict in the terms of the plea agreement, we must adopt the construction of the agreement that is most favorable to Buckley: a maximum prison sentence of fifteen years. Because Buckley instead received an indeterminate prison sentence of fifteen years to life, it is evident that the state breached the plea agreement and that the breach had a "substantial **[**26]** and injurious effect" **[*699]** upon Buckley. *Brecht*, 507 U.S. at 637.

III

As the district court found, Buckley has two available remedies at law for the breach of his plea agreement: withdrawal of his plea (i.e., rescission of the contract) and specific performance. _Buckley_, 266 F. Supp. 2d at 1143; *see also* _Santobello_, 404 U.S. at 263 (positing the same two alternative remedies). **HN15** Where a plea agreement is breached, the purpose of the remedy is, to the extent possible, to "repair the harm caused by the breach." _Toscano_, 124 Cal. App. 4th at 345 (citing _People v. Kaanehe, 19_ Cal.3d 1, 14, 136 Cal. Rptr. 409, 559 P.2d 1028 (1977)).

In Buckley's case, only one of the remedies appears to us to be viable. Buckley has already fulfilled his obligations under the plea agreement, including testifying on behalf of the state against Fauber and Caldwell and serving his bargained-for sentence. **10** In so doing, he has "paid in a coin that the state cannot refund." _Brown, 337 F.3d at 1161_. Rescission of the plea agreement cannot repair the harm caused by the state's breach. See _Carter v. McCarthy, 806 F.2d 1373, 1377_ (9th Cir. 1986). **[**27]** That harm can best be addressed by holding the state to its agreement and affording Buckley the benefit of his bargain. **11** Thus, Buckley is entitled to specific performance of the plea agreement: a maximum prison sentence of fifteen years.

## FOOTNOTES

**10** Buckley was taken into custody on November 12, 1987, the date that he was charged with burglary, robbery and first degree murder. The district court granted him habeas relief on December 6, 2002. He was thereafter released.

**11** We express no view on what the proper remedy would be in a case with other facts. As the California Supreme Court has held, the appropriate remedy in breach of plea agreement cases depends on the nature of the breach, which party (e.g., the defendant, the prosecutor or the trial court) has breached the agreement, and which party seeks enforcement of the contract. _Kaanehe, 19 Cal.3d at 13_. To that we would add, "and what has transpired since the agreement was made." Here, we hold only that **HN16** in a case in which the state has already received the benefit of the bargain, the harm caused by its breach is generally best repaired by specific performance of the plea agreement, although a defendant may, if he so chooses, elect instead to rescind the agreement and take his chances from there.

**[**28]** We arrive at our decision notwithstanding the state's argument that a determinate fifteen year prison term is not a lawful sentence for second degree murder under California law. Consistent or not with the state's sentencing statute, that is the bargain that California made in 1987. Buckley has fulfilled his promises, and it is now too late for the state to argue that it was not in a position to offer him a fifteen year sentence in exchange. As we stated in *Brown*, addressing an identical argument: "This may be a problem for the state, but not for [the defendant]." _337 F.3d at 1161_.

IV

Under _Santobello_, Buckley had a due process right to enforce the provisions of his plea agreement. Under _Adamson_, the state court was required to interpret Buckley's plea agreement pursuant to California contract law; in not doing so, it failed to apply clearly established federal law set forth by the United States Supreme Court. _28 U.S.C. § 2254(d)(1)_. The consequence was that Buckley was sentenced to an indeterminate prison term of fifteen years to life when the bargained-for sentence, to **[*700]** which he was constitutionally entitled, was a maximum of **[**29]** fifteen years. Thus, the state court committed constitutional error that had a substantial and injurious effect on Buckley. He is entitled to habeas corpus relief.

The district court's judgment granting Buckley's petition for a writ of habeas corpus is **AFFIRMED**.

**DISSENT BY:** Consuelo M. Callahan

## DISSENT

CALLAHAN, Circuit Judge, with whom Tallman, Circuit Judge, joins, dissenting:

I respectfully dissent. The majority notes the standard for relief set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, but then substitutes its factual findings for those of the state court. Although the majority professes to grant relief under § 2254(d)(1), holding that the state court's decision involved an unreasonable application of clearly established federal law, my reading of its opinion is that it actually, and incorrectly, concludes that the state court's decision was based on an unreasonable determination of fact. See 28 U.S.C. § 2254(d)(2).

The majority's perspective rests on two premises. First, it asserts that it was established federal law in 1999, that the construction and interpretation of plea agreements **[**30]** were matters of state law and that in California a plea agreement was interpreted according to the same rules as other contracts. Second, the majority concludes that under California law, the uncertainty in the plea agreement requires that the agreement be construed against the state.

I agree with the majority that the construction and interpretation of plea agreements are matters of state law, that in California plea agreements are interpreted similarly to other contracts, and that here the plea agreement is ambiguous. I also agree that the ambiguity in the plea agreement requires that we look to the expectations of the promisee in the context of the contract as a whole and the relevant surrounding circumstances. I part company with the majority on the conclusions we reach from examining the surrounding circumstances. The majority finds that the surrounding circumstances do not resolve the ambiguity. AEDPA, however, requires that we defer to the state court's factual determination that Buckley "well knew" that he had bargained for a sentence of 15 years to life unless that finding is not sup-ported by substantial evidence. Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004). **[**31]** Because I cannot say "that an appellate panel, applying the normal standard of appellate review, could not reasonably conclude that the finding is supported by the record," see id. at 1000, I would deny Buckley's petition for a writ of habeas corpus.

In its most recent opinion concerning the interpretation of plea agreements, the California Supreme Court, after reiterating that a plea agreement is interpreted according to general contract principles, wrote:

> "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, 'if the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' (Id., § 1649; see AIU [AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 274 Cal. Rptr. 820,] 822 [51 Cal. 3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253].)" (Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1264-1265, 10 Cal.Rptr.2d 538, **[*701]** 833 P.2d 545.) **[**32]** "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. (Civ. Code, §§ 1635-1656; Code Civ. Proc., 1859-1861, 1864; [citations].)" (Morey v. Vannucci (1998) 64 Cal. App. 4th 904, 912, 75 Cal.Rptr.2d 573; see also People v. Toscano, supra, 124 Cal. App. 4th at p. 345, 20 Cal.Rptr. 3d 923.)

People v. Shelton, 125 P.3d 290, 37 Cal. 4th 759, 37 Cal.Rptr. 3d 354, 358 (Cal. 2006) (emphasis added) (alterations in original).

The California Supreme Court proceeded to explain that in resolving the ambiguous plea agreement before it, it would:

> consider the circumstances under which this term of the plea agreement was made, and the matter to which it relates (Civ. Code, § 1647) to determine the sense in which the prosecutor and the trial court (the promisors) believed, at the time of making **[**33]** it, that defendant (the promisee) understood it (id., § 1649).